[S. F. No. 16487. In Bank.—Oct. 8, 1941.]

ANTONIA KLEIBER, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Charles A. Christin and T. J. Keegan for Appellant.

John J. O'Toole, City Attorney, Walter A. Dold, Chief Deputy City Attorney, and William A. O'Brien, Deputy City Attorney, for Respondents.

Stephen Wyckoff as *Amicus Curiae* on behalf of Respondents.

SHENK, J.—The plaintiff, a tax-payer of the city and county of San Francisco, sought an injunction against the city, its board of supervisors, the housing authority of the city and its members, to prevent the performance of the provisions of certain contracts entered into pursuant to the Housing Authorities Law, and to have such contracts declared void. The court found for the defendants and entered judgment accordingly. The plaintiff appealed.

In support of the appeal it is contended that the trial court erroneously found and concluded that the contracts were in accordance with law and therefore valid. The basis of the plaintiff's contention is the provision of the Charter of the City and County of San Francisco, hereinafter called the city, that every legislative act must be by ordinance. The contracts were authorized by resolution of the board of supervisors.

In order to take advantage of the federal loans provided by the United States Housing Authority Act of 1937 (42 U. S. C. A., secs. 1401–1430), the California legislature adopted the Housing Authorities Law (Stats. 1938, Ex. Sess., p. 9, Deering's Gen. Laws, 1939 Supp., Act 3483), and related acts (Stats. Ex. Sess. 1938, p. 2, Deering's Gen. Laws, 1939 Supp., Act 3484; Stats. Ex. Sess. 1938, p. 1, Deering's Gen. Laws, 1939 Supp., Act 3485). This law was upheld as constitutional in *The Housing Authority of the County*

*of Los Angeles* v. *Dockweiler,* 14 Cal. (2d) 437 [94 Pac. (2d) 794].

Section 4 of the Housing Authorities Law provides that there is created in each city, county, and city and county of the state a public body corporate and politic to be known as the "housing authority"; but that such authority shall not function until or unless the governing body of the city or county, or city and county, by proper resolution shall declare that there is need for the authority to function. The section also provides that the governing body may adopt a resolution declaring that there is need for the housing authority if it shall find that insanitary or unsafe inhabited dwelling accommodations exist or that there is a shortage of safe or sanitary dwelling accommodations available to persons of low income at rentals they can. afford. It is also provided that in any action involving the validity or enforcement of any contract of the authority, the authority shall be conclusively deemed to have become established and authorized to transact business and exercise its powers upon proof of the adoption of a resolution by the governing body declaring the need for the authority.

At the same session of the legislature the Housing Cooperation Law was enacted. (Stats. 1938, Ex. Sess., p. 2.) That act provides the powers which may be exercised by a city or county, or city and county, which has declared the necessity for the housing authority to function, and the contracts which may be entered into between it and such housing authority. Section 7 provides that the exercise of the powers granted may be authorized by resolution of the governing body of the city or county, or city and county, which resolution shall take effect immediately and need not be laid over or published or posted.

Still another act (Stats. 1938, Ex. Sess., p. 1), provides that all property of a housing authority shall be exempt from any and all taxes and special assessments. It contains a proviso that in lieu of taxes and special assessments a housing authority may agree to make payments to the city for services, improvements or facilities furnished by the city for the benefit of a housing project owned by the housing authority, such payment not to exceed the estimated cost of such services, improvements or facilities.

After the effective date of the foregoing legislation and on March 28, 1938, the Board of Supervisors of the city and county of San Francisco adopted a resolution, duly approved by the mayor, finding and declaring that there is need of the housing authority in the city; that insanitary and unsafe inhabited dwelling accommodations exist therein; and that there is a shortage of safe and sanitary dwelling accommodations therein available to persons of low income at rentals which they can afford. On the same day the mayor appointed the commissioners of the housing authority of the city and county of San Francisco.

On July 20, 1938, the city and the housing authority entered into an equivalent elimination agreement respecting the execution of a slum clearance and construction of a low-rent housing project in the Holly Park-Potrero district. The authority made application to the United States Government for a loan which has been approved by the federal authority.

On January 25, 1939, the board of supervisors of the city adopted a resolution authorizing the city to enter into a municipal cooperation agreement with the housing authority whereby the city should agree not to levy or impose any taxes or special assessments against the project or the authority, and that it would furnish to the project without cost municipal services and facilities, including fire, police and health protection, street maintenance and lighting, sewer maintenance, and repairs to municipal facilities. The furnishing of such free services was limited to the period of the physical usefulness of the project for the purpose of providing dwelling accommodations, and in no event less than the number of years during which any bonds issued in financing the development of such projects should remain outstanding. Such an agreement was executed by the parties on January 27, 1939.

Section 13 of the Charter of the City and County of San Francisco provides that action by the board of supervisors shall be by ordinance or resolution and that "every legislative act shall be by ordinance."

The trial court specifically found and concluded that the foregoing resolutions were adopted by the board of supervisors in accordance with the provisions of the charter and

in conformity with law and that the contracts entered into pursuant thereto were valid. Its judgment was based on that finding and conclusion.

The plaintiff contends that the action of the board of supervisors represented by the various resolutions was legislative in character as distinguished from administrative or executive; that the board could therefore validly authorize the contracts referred to only by ordinance, as distinguished from action by resolution. The plaintiff relies on *Hopping* v. *Council of the City of Richmond,* 170 Cal. 605 [150 Pac. 977], wherein this court held that action of the city council providing for the acquisition of land and the construction of a city hall and offices was legislative rather than administrative in character, and was therefore subject to a referendum. That decision recognized, however, that the power of referendum does not apply to acts which are not legislative in character, and that executive and administrative acts, whether initiated by resolution or ordinance, are not subject to that reserved power. (See also *Brazell* v. *Zeigler,* 26 Okla. 826 [110 Pac. 1052].)

It is not here questioned that if the action of the board of supervisors in adopting the foregoing resolutions was not legislative, but was executive or administrative in character, then the argument and the decisions relied on by the plaintiff are unavailing.

In the Hopping case (p. 614) it was said that the action by the city council involved a determination that the public interest of the city required that it should have a city hall, which should be located on land offered for the purpose, that a building should be constructed thereon and a suitable appropriation made for the purpose. "This constituted a declaration of a public purpose and a provision for ways and means of its accomplishment . . . it was to that extent a thing which the legislative power alone may declare and determine. The council could consider the questions of public good, public interests, and public policy involved solely by virtue of and in the exercise of its legislative power, and its action thereon was clearly an act in the exercise of that power." The court there distinguished cases in which a contrary conclusion had been reached by pointing out that in such cases the measures held to constitute merely executive or administrative action were not such as declared a public

purpose or policy, but were designed merely as detail to carry out a previously declared legislative purpose and policy. Therefore, if the action be designed merely to carry into effect law already enacted it may be said to be administrative rather than legislative action.

The distinction pointed out in that case must be deemed determinative of the question presented here. The public purpose here involved was declared and made law by the legislature of this state when it enacted the Housing Authorities Law and related acts. That law applies to and affects the entire citizenry of the state as a body, whether the details incident thereto be executed in one or another, in several or in all of the political subdivisions authorized to act thereunder. The declared purpose and policy of the legislature is slum clearance and substitution of low-rent, safe and sanitary dwellings. (*The Housing Authority of Los Angeles County* v. *Dockweiler, supra,* p. 441.) In *Adler* v. *Deegan,* 251 N. Y. 467, 476 [167 N. E. 705, 711], which upheld a slum clearance act of the New York Legislature directed to conditions in New York City, Mr. Chief Justice Cardozo summed up the statewide concern of the law by saying: ''It seeks to bring about conditions whereby healthy children shall be born, and healthy men and women reared, in the dwellings of the great metropolis. To have such men and women is not a city concern merely. It is the concern of the whole state. Here is to be bred the citizenry with which the state must do its work in the years that are to come. The end to be achieved is more than the avoidance of pestilence or contagion. The end to be achieved is the quality of men and women. . . . If the moral and physical fiber of its manhood and its womanhood is not a state concern, the question is, what is? Till now the voice of the courts has not faltered for an answer. . . . '' After pointing out what local measures may be considered strictly city affairs he continued: ''If any one thing, however, has been settled in this realm of thought by unison of opinion, it is the state-wide extension of the interest in the maintenance of life and health. The advancement of that interest, like the advancement of education, is a function of the state at large.''

Similarly in *Humphrey* v. *City of Phoenix,* 55 Ariz. 374 [102 Pac. (2d) 82], it was said, citing the case of *Adler* v. *Deegan, supra:* ''While slum clearance in cities and towns

only is provided for by the municipal housing law, the necessity that such subdivisions of the state be kept in sanitary and safe condition is essential to the health, morals and general welfare of the whole state.''

In *People* v. *Newton,* 106 Colo. 61 [101 Pac. (2d) 21], the court, in upholding the constitutionality of similar legislation, stated: ''If the constitutional basis for the enactment of the National Housing Act was the general welfare of the nation, it would seem reasonable to assume that the enactment here in question is a valid exercise of the state's legislative power in promoting the general welfare of the state.''

The plaintiff urges that the foregoing cited cases are not in point here because she is not attacking the constitutionality of the Housing Authorities Law. Nevertheless, the issues raised by the plaintiff's appeal, although not directly involved therein, should be deemed to be concluded by the decision in the case of *Housing Authority of Los Angeles County* v. *Dockweiler, supra.* In that proceeding, this court, in determining that the Housing Authorities Law was constitutional, necessarily established that its public purpose and policy was to be effective throughout the state. The act created a housing authority as a separate public body corporate and politic in each city, county, and city and county of the state. It provided that that body was to function upon the specified finding of necessity therefor by resolution of the governing body of the city, county, or city and county. The act also prescribed the powers, duties and obligations of the authority and of the city in carrying out its salutary purposes. Every necessary legislative act was completed by the legislature. There was nothing left to do except to administer the law. Governing bodies of cities, counties, or cities and counties perform both legislative and executive or administrative acts. The former is ordinarily performed by ordinance; the latter may be done by resolution. The steps to be taken by the city to gain the advantages afforded by the law are in the ascertainment of facts, and are administrative in character. To gain those advantages the city must proceed in the manner specified in the act. Furthermore, since the statute is the only authority under which the city may act in the premises, and the subject matter of the action is of more than local concern, the city is bound to proceed in accordance therewith.

■ The plaintiff asserts that in the cases deciding the constitutional question the propriety of the procedure was not involved. There was no such question raised in the Dockweiler case, a *mandamus* proceeding, for the apparent reason that, as in the present case, the steps were taken in accordance with the statute. Since the act has been declared constitutional and the proceedings here involved have been taken in accordance therewith, there would seem to be no question of illegality open to the plaintiff in this case. Pursuant to the act the housing authority and the city may contract to put into effect the purposes and aims of the law. The city is given the power to dedicate property for the purpose, which is made tax exempt, and to furnish municipal services without compensation unless the housing authority elects to pay the cost thereof. (Sec. 2, Stats. 1938, Ex. Sess., p. 1.) These purposes and provisions are constitutional, and the contracts between the housing authority and the city are in conformity therewith. It is clear that all of these matters are administrative only for the purpose of giving statewide effect to the declared legislative policy, and are therefore acts which the legislature may delegate as provided by the statute. (*The Housing Authority of Los Angeles County* v. *Dockweiler, supra,* p. 462.)

The foregoing discussion requires an affirmance of the judgment without the necessity of considering other contentions made by the parties.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Moore, J., *pro tem.,* Pullen, J., *pro tem.,* concurred.

Appellant's petition for a rehearing was denied October 30, 1941.