[Sac. 6097. In Bank. June 21, 1950.]

HOUSING AUTHORITY OF THE CITY OF EUREKA, Petitioner, v. SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent.

Woodman, Leddy & Sautter and Stanley Woodman for Petitioner.

William A. O'Brien, Amicus Curiae on behalf of Petitioner.

E. S. Mitchell for Respondent.

EDMONDS, J.—By writ of prohibition, the petitioner is seeking to restrain the superior court from taking any further action in connection with two cases pending before it. The litigation under attack stems from the Authority's application to the federal government for a loan of money to be used in the construction of low-rent public housing, and the principal question here presented for decision is whether the city council of Eureka, in approving the transaction, was acting in an administrative or in a legislative capacity.

The United States Housing Act of 1937 (42 U.S.C.A. §§ 1401-1430) established a federal housing agency authorized to make loans to state agencies for the purpose of slum clearance and low-rent housing projects. The California Legislature made the benefits of the federal act available to the cities and counties of this state by enacting the Housing Authorities

Law (Stats. 1938, Ex. Sess., p. 9, Deering's Gen. Laws, 1939 Supp., Act 3483). This statute expressly recognizes the existence of slum and substandard living areas within the state, and enunciates the government's intention to eliminate them.

The legislation created in each city and county a public housing authority, of which the petitioner is one. The exercise of the powers entrusted by the Legislature to these agencies was made subject to the preliminary condition that the local governing body, in each case, must formally resolve that public housing is needed. Subject to this condition precedent to operation, each local authority is given extensive powers to administer the state and federal statutes. The Legislature also enacted two statutes (Stats. Ex. Sess. 1938, pp. 1, 2, Deering's Gen. Laws, 1939 Supp., Acts 3484, 3485) authorizing cooperation of the cities and counties with the local housing authorities in reference to tax exemption, dedication of streets, the exercise of eminent domain and other functions.

The federal Housing Act of 1937, as amended in 1949 (Public Law 171, 81 Congress), requires, among other things, that the governing body of any municipality in which a housing authority has been established must approve its application for a loan. Other conditions for obtaining federal funds are a "No Litigation Certificate" and an agreement between the governing body and the Authority providing for local cooperation.

The Housing Authority of Eureka was approved by Resolution No. 3720 of the city council, which recognized the need for such agency. Eventually the Authority applied to the federal Public Housing Administration for a preliminary loan in the amount of $150,000 to cover the costs of surveys and planning in connection with the development of 500 dwelling units of low rent housing. The city council by resolution approved the application. The resolution, after reciting that the Authority had applied for a federal loan, stated, ". . . there exists in the City of Eureka a need for such low-rent public housing at rents within the means of low-income families, especially families of living or deceased veterans and servicemen . . . and . . . such a condition constitutes a menace to the health, safety, morals and welfare of the inhabitants of the City. . . ." The resolution also declared that the application was approved upon ". . . the distinct understanding that the City of Eureka shall not be obligated to the United States Government or the PHA [Public Housing Administra-

tion] for the repayment of any preliminary loans or any other loans or advances made to the local Housing Authority.''

Shortly after this resolution was adopted, the city of Eureka and the Authority entered into a cooperation agreement in accordance with the requirements of the applicable statutes. By this contract, the city declared that ''Under the constitution and statutes of the State of California, all Projects are exempt from all real and personal property taxes and special assessments levied or imposed by any Taxing Body'' for the duration of the facilities' use for low-rent housing purposes or the period during which any bonds issued in connection with the housing should remain outstanding. The city also accepted the standard covenants under the federal law that it would provide the residents of the housing areas public facilities including educational, fire, police and health protection services, sewer systems, maintenance of public streets, street lighting, and garbage disposal. The city also agreed to grant easements, waive certain building laws and within five years to condemn ''. . . unsafe or insanitary dwelling units situated in the locality or metropolitan area of the City substantially equal in number to the number of newly constructed dwelling units provided by such Project. . . .''

Upon the filing of these documents, the United States Public Housing Administration issued to the local Authority a Program Reservation whereby the sum of $58,000 was allocated to the Authority for a period of 90 days, conditional upon its being able to furnish a ''No Litigation Certificate.'' On the following day, a referendum petition bearing 1,822 signatures was presented to the clerk of the city of Eureka, praying for the submission to the electorate of the question of acceptance or rejection of the resolution of the city council approving the Authority's application for a loan. The referendum petition was filed in reliance upon section 43½ of the Freeholders Charter of Eureka, which provides, in part, as follows:

''If within . . . thirty days a petition . . . signed by [the required number of] qualified electors . . . is filed with the City Clerk, asking that any [ordinance or measure] adopted by the City Council, be submitted to the electorate, then such ordinance or measure must either be repealed or submitted to the electors for approval or rejection . . .; and if such ordinance or measure has not gone into effect before the filing of such petition or petitions, and said petition or petitions are signed by qualified electors of the city, in number equal to 15 per cent of said registration, then such ordinance or measure shall

not go into effect until and unless adopted at such election. . . .'' The petition which is here in controversy was signed by more than 15 per cent of the electorate.

The city clerk refused to receive or file the petition. Certain electors of the city, acting on their own behalf and also for others similarly interested, then commenced an action in mandate for the purpose of requiring the city clerk to accept and file the referendum petition. (*Omicini* v. *Shanahan,* No. 24402.) The same group of electors also sued to enjoin the members of the city council from proceeding with the housing program initiated and being carried out by the Authority. (*Cannam* v. *Local Housing Authority,* No. 24485.) In the first action the superior court issued an alternative writ of mandate. In the second one it ordered the members of the city council to show cause why they should not be enjoined from taking any action in connection with the housing program.

As grounds for relief in the present proceeding, the Authority and the city clerk contend that the provisions of the charter of Eureka are inapplicable to the action of the city council in adopting Resolution 3911 because that body acted under the Federal Housing Act and the Housing Authorities Law of California. The action of the city council was administrative in nature, the Authority argues; therefore the superior court has no jurisdiction to issue a writ of mandate. Another point relied upon is that more than 30 days have elapsed since the resolution was adopted and the question as to the city clerk's duty to accept the referendum petition has become moot. As amicus curiae on behalf of the petitioner here, the Housing Authority of the City and County of San Francisco insists that this proceeding is the only remedy available to prevent the destruction of the Eureka housing program and perhaps of similar programs throughout the state. The superior court has no jurisdiction, it declares, either to require the city clerk of Eureka to file the referendum petition or to enjoin the members of the local legislative body.

Peter Omicini and Curr W. Cannam, who are suing in the superior court, on their own behalf and for the other signatories of the referendum petition, insist that the superior court is not exceeding its jurisdiction, in that it has general power to entertain a mandate proceeding and has not yet issued a peremptory writ. It is argued that this court should not anticipate the final judgment of the superior court, since ''An

Alternative Writ of Mandate is merely a process which brings the matter before a judicial tribunal,'' and the superior court has jurisdiction to interpret any provision in the city charter. As further grounds for denying relief, it is argued that section 43½ of the city charter requires the City Clerk of Eureka to accept and file any referendum petition presented, the resolution of the city council is of local interest only, and the Authority is responsible for delaying the mandate proceeding by requesting a continuance.

To justify the issuance of a writ of prohibition, it must be shown that the act sought to be restrained is judicial in nature (*Quinchard* v. *Board of Trustees,* 113 Cal. 664 [45 P. 856] ; *Duke* v. *Justice's Court,* 42 Cal.App.2d 178 [108 P.2d 707] ) ; that there is a lack or an excess of jurisdiction (Code Civ. Proc., §§ 1068, 1074, 1102 ; *Brock* v. *Superior Court,* 29 Cal.2d 629 [177 P.2d 273, 170 A.L.R. 521] ; *Howard* v. *Superior Court,* 25 Cal.2d 784 [154 P.2d 849] ) ; and that there is no other adequate remedy (*Golden State Glass Corp.* v. *Superior Court,* 13 Cal.2d 384 [90 P.2d 75] ; *Consolidated Adjustment Co.* v. *Superior Court,* 189 Cal. 92 [207 P. 552] ; *Fletcher* v. *Superior Court,* 79 Cal.App. 468 [250 P. 195] ).

In the present case it is obvious that in entertaining an action in mandate or for an injunction, the superior court is performing judicial functions. As to the adequacy of any other remedy, it is alleged and not denied that the federal Public Housing Authority issued to petitioner a program reservation of $58,000 for use in effecting the plans and surveys, conditioned upon its being able within 90 days to furnish a ''No Litigation Certificate.'' An extension of time has been granted until there has been a decision in the present proceeding. It is alleged and not denied that funds reserved by the federal government for the Eureka project will not be available if the certificate cannot be provided within the time as extended. Thus, even if the lower court eventually denies a peremptory writ of mandate and refuses to enjoin the city council, the inevitable passage of time may have destroyed petitioner's hopes of obtaining the desired federal low-cost housing plan. It is clear, therefore, that the petitioner's only adequate remedy in this case is the relief which is asked in the present proceeding.

Whether the third and basic requirement for prohibition, that the tribunal be acting without or in excess of jurisdiction, is present, depends upon the legal nature of the

city council's act in adopting its resolution approving the Authority's application for a federal loan.

"Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari . . .* [A] tribunal has jurisdiction to determine its own jurisdiction. . . . But once a tribunal, judicial or administrative, has made this determination of the issue, and has acted to assume jurisdiction of the cause, the rule no longer has any meaning. *The jurisdiction to determine jurisdiction has been fully exercised* by a determination in favor of jurisdiction over the cause; the question is no longer jurisdiction to *determine,* but of jurisdiction to *act.* (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 291, 303 [109 P.2d 942, 132 A.L.R. 715].)

In the present case, upon the petition of certain electors, the superior court issued an alternative writ of mandate and an order to show cause. It has therefore assumed jurisdiction of the cause and exercised its jurisdiction to determine its own jurisdiction.

■ The power of referendum applies only to acts that are legislative in character; executive or administrative acts are not within the scope of that remedy. (*Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 624, 625 [213 P.2d 492]; *Kleiber* v. *City & County of San Francisco,* 18 Cal.2d 718, 722 [117 P.2d 657]; *Hopping* v. *City of Richmond,* 170 Cal. 605 [150 P. 977].) If the resolution of the city council was administrative in nature, the superior court has no jurisdiction to entertain an action for the purpose of requiring submission of that resolution to a referendum vote. If, on the other hand, the resolution was a legislative act, then it is clear that section 43½ of the city charter required the city clerk to accept and file the petition presented to her and the superior court may implement that provision.

■ The United States Housing Act of 1937 is constitutional (*City of Cleveland* v. *United States,* 323 U.S. 329, 333 [65 S.Ct. 280, 89 L.Ed. 274]), as is the Housing Authorities Law of the State of California (*Housing Authority of County of Los Angeles* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794]). These statutes were analyzed in *Kleiber* v. *City and County of*

*San Francisco,* 18 Cal.2d 718, 724, 725 [117 P.2d 657], as follows: ". . . [T]his court, in determining that the Housing Authorities Law was constitutional, necessarily established that its public purpose and policy was to be effective throughout the state. . . . The act also prescribed the powers, duties and obligations of the authority and of the city in carrying out its salutary purposes. Every necessary legislative act was completed by the legislature. There was nothing left to do except to administer the law. . . . To gain those advantages the city must proceed in the manner specified in the act. Furthermore, since the statute is the only authority. under which the city may act in the premises, and the subject matter of the action is of more than local concern, the city is bound to proceed in accordance therewith. . . .

"Pursuant to the act the housing authority and the city may contract to put into effect the purposes and aims of the law. . . . [Listing duties and powers of the city]. . . . It is clear that all of these matters are administrative only for the purpose of giving statewide effect to the declared legislative policy, and are therefore acts which the legislature may delegate as provided by the statute."

The Kleiber decision is not limited by the language of the San Francisco charter; in broad terms the court determined the nature of local government's acts. ■ When the sole basis for a determination is whether a certain "contingent effect" exists to warrant local application of state legislation, the exercise of that narrow authority is an administrative act and not a legislative one. (*United States* v. *Curtiss-Wright Export Corp.,* 229 U.S. 304 [57 S.Ct. 216, 81 L.Ed. 255]; *J. W. Hampton, Jr. & Co.* v. *United States,* 276 U.S. 394 [48 S.Ct. 348, 72 L.Ed. 624]; *Kleiber* v. *City & County of San Francisco,* 18 Cal.2d 718, 723 [117 P.2d 657]; *Housing Authority* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794].)

■ Further, it is clear from the wording of the city charter of Eureka that the electors of that city and the legislators in approving the charter did not intend to extend the referendum to administrative acts. Section 43½ provides that the referendum procedure shall apply to any "ordinance or measure" adopted by the city council. "The words 'ordinance' and 'measure' are synonymous, each meaning a legislative enactment." (*Whitmore* v. *Carr,* 2 Cal.App.2d 590, 593 [38 P.2d 802]; *State* v. *Chandler,* 105 Ohio St. 499 [138 N.E. 67, 69]; *Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 623 [213

P.2d 492] ; *Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160, 193 [50 P. 277] ; *McPherson* v. *Richards,* 134 Cal.App. 462, 466 [25 P.2d 534] ; *Weisman* v. *Board of B. & S. Commrs.,* 85 Cal.App. 493 [259 P. 768].) The use of the terms "ordinance" and "measure," clearly show the intent to allow the referendum powers to be used only to review legislative action of the city council. A charter giving a small group of electors the right to demand a vote of the people upon every administrative act of the city council would place municipal government in a straight-jacket and make it impossible for the city's officers to carry on the public business.

But assuming that the charter of Eureka goes that far, its provisions have been superseded by the more recent state legislation which extends the benefits of the federal housing act to the cities and counties of this state. As held in the Kleiber case, *supra,* the actions of local governing bodies under the statewide housing laws ". . . are administrative only for the purpose of giving statewide effect to the declared legislative policy. . . ."

For these reasons, the resolution of the city council is not subject to the referendum provisions of the municipal charter and the members of the council may not be enjoined from approving the actions of the authority in carrying out a housing program for the city of Eureka. A peremptory writ of prohibition will issue accordingly.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

SHENK, J., Concurring and Dissenting.—I concur in the order that the writ of prohibition issue but I do not agree with the reasons on which it is based.

It was clearly announced in *Housing Authority* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794], and *Kleiber* v. *City and County of San Francisco,* 18 Cal.2d 718 [117 P.2d 657], that a measure such as is here sought to be subjected to the referendum is but an administrative step to be taken by the local body under the Housing Authorities Law (Stats. 1938, Ex. Sess., p. 9, Deering's Gen. Laws, 1939 Supp., Act 3483).

One of the contentions of the respondent is that the electors of the city have the right to vote on the question whether the city council properly found that there was a slum area and a need of low-rent housing. But that point in the housing project has long since passed. The Housing Authorities Law

provides: "Sec. 4. Creation of Housing Authorities. In each city (as herein defined) and in each county of the state there is hereby created a public body corporate and politic to be known as the 'housing authority' of the city or county; provided, however, that such authority shall not transact any business or exercise its powers hereunder until or unless the governing body of the city or the county, as the case may be, by proper resolution shall declare at any time hereafter that there is need for an authority to function in such city or county." Provisions follow relative to the methods by which the proceeding for investigation and determination of the need may be initiated and concluded. The section then provides: "In any suit, action or proceeding involving the validity or enforcement of or relating to any contract of the authority, the authority shall be conclusively deemed to have become established and authorized to transact business and exercise its powers hereunder upon proof of the adoption of a resolution by the governing body declaring the need for the authority . . ."

The petition for the writ of prohibition alleges: "That at all times herein mentioned Housing Authority of the City of Eureka was and is a public corporation properly constituted and validly functioning by authority of the Housing Authorities Law of this State, and Resolution No. 3720 of the said City of Eureka." No attempt was made to subject that resolution to the referendum and its validity is not properly under attack here. The allegation admits that the initial step provided for in section 4 of the Housing Authorities Law has been duly taken and has established the Housing Authority of the city of Eureka as a functioning arm of the state to carry out the objectives of the state law.

The injunction proceeding in the Kleiber case involved an attack upon the validity of contracts entered into by the similarly established Housing Authority of the City and County of San Francisco. Neither that case nor any other case should be deemed to have decided that the initial action establishing the housing authority under section four is an administrative act. The action of the governing body under section 4 is undoubtedly a legislative act subject to the referendary provisions of the city charter. That is to say, when the city council by resolution decided to proceed under the state law pursuant to the procedures there provided and made its determination that there was need for a housing authority in the city of Eureka, it was exercising a legislative function. All

steps taken thereafter pursuant to the statute as indicated in the Kleiber decision, are administrative and the electors of the city have no referendary power under the city charter to interfere with the performance of those powers and duties. It would follow that the action of the city council here involved is not subject to the referendary provisions of the city charter.

The majority appear to accept *Kleiber* v. *City and County of San Francisco, supra* (18 Cal.2d 718), and *Hopping* v. *Richmond,* 170 Cal. 605 [150 P. 977], as settling in all cases that the power of referendum may be exercised only as to legislative acts. The Kleiber case did not involve the reserved power by the electorate. The Hopping case involved the referendary provision of the Richmond city charter and the decision was confined to the express language of that organic instrument. It was recognized, however (170 Cal. at p. 611), that if the reserved powers in the charter exceeded those reserved in the constitution, the effect of the charter would be to give to the electors of the city the additional reserved powers. The court should not now foreclose the question which was thereby left open when it is not necessary to do so. I therefore do not agree with the statement of the majority that the ''power of referendum applies only to acts that are legislative in character; executive or administrative acts are not within the scope of that remedy.'' The people of the state might constitutionally provide for a referendum on administrative measures, however impractical that might prove to be. Also a city through a freeholders' charter—its fundamental law—could expressly provide for a referendum on administrative measures that are of local concern.

Nor do I agree with the majority declaration that the words in the charter used in the disjunctive, namely, ''ordinance or measure,'' mean one and the same thing. Quite often powers of a city, even those legislative in character, may be exercised by resolution. Under the language of the charter of the city of Eureka, a resolution would be a ''measure'' as distinguished from an ''ordinance.''

It is unnecessary in this proceeding to determine the extent of the reserved powers of the city under its charter for the reason that in acting in the matter now sought to be subjected to the referendum the city is merely performing an administrative act pursuant to a statute which provides the implements to carry out a project which, once duly initiated, is a matter of more than local concern.

CARTER, J.—I concur in the conclusion reached, and agree with the view expressed by Mr. Justice Edmonds to the effect that the resolution involved an administrative matter and was therefore not subject to referendum. However, I see no necessity for going further and holding that, because the housing authority law is of statewide concern, it is not subject to referendum. That may well be one factor in determining whether an act is administrative or legislative. If the law is of a statewide nature, then even a charter city has no word in policy questions which are involved in legislation of this character.

I agree with Mr. Justice Shenk that "measure" and "ordinance" are not synonymous where both are used coupled by the disjunctive "or."

Real Party in Interest's petition for a rehearing was denied July 20, 1950. Shenk, J., voted for a rehearing.