[Civ. No. 28739. First Dist., Div. One. Feb. 23, 1972.]

LARRY MARTINEZ, Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF SONOMA COUNTY,
Defendants and Appellants;
IGNAZIO A. VELLA et al., Interveners and Appellants.

COUNSEL

Richard M. Ramsey, County Counsel, and James P. Botz, Deputy County Counsel, for Defendants and Appellants and for Interveners and Appellants.

Yeghiayan, Spiegel & Tobriner, Yeghiayan, Spiegel, Tobriner & Moreno, Vartkes Yeghiayan, Martin Spiegel and Michael Tobriner for Plaintiff and Respondent.

OPINION

**MOLINARI, P. J.**—Appellants, the Board of Supervisors of the County of Sonoma (hereinafter "the Board"), and the county clerk of said county,

on behalf of himself and all others similarly situated, appeal from a judgment ordering the issuance of a peremptory writ of mandate commanding the county clerk to refrain from counting or canvassing, or from publishing the count of, the votes that were cast in an election by the voters of Sonoma County as to whether an ordinance should be enacted. The proposed ordinance provided that, upon making a determination that there is a shortage of safe or sanitary dwelling accommodations available to persons of low income at rentals they can afford, the Board shall declare that there is a need for a housing authority to function in accordance with the Housing Authorities Law. We have concluded that the court erred in issuing such a writ and that the judgment must be reversed.

On February 2, 1970, a hearing was held by the Board concerning the question whether a local housing authority should be brought into active operation. The Board did not determine whether there was a need for a housing authority but voted instead to place the matter on the ballot for the June primary election because "such a housing program could not be successful without the express support of the electorate."[1]

On April 22, 1970, petitioner, an indigent recipient of public assistance, filed an action on behalf of himself and other low-income people praying that a writ of mandate issue directing the Board to proceed to make a determination whether there exists in the County of Sonoma a need for a housing authority to function, and restraining the Board from submitting the measure to the electorate. In response to the court's alternative writ of mandate, the Board argued that, since the absentee ballots had already been printed and the machinery for the preparation of the regular ballots was already far along, it would work a hardship on the county to require it to change the items that appeared on the ballot. On May 6, 1970, the court partially discharged the alternative writ when it determined that the Board should not be restrained from placing the matter on the ballot because the

---

[1] The measure placed on the June ballot pursuant to a resolution adopted by the Board on March 31, 1970, provided as follows: "Shall the following ordinance be enacted: ORDINANCE NO. ———— AN ORDINANCE OF THE COUNTY OF SONOMA DIRECTING THE BOARD OF SUPERVISORS IN RE THE ACTIVATION OF THE LOCAL HOUSING AUTHORITY TO BE GOVERNED BY THE BOARD OF SUPERVISORS.

"THE PEOPLE OF THE COUNTY OF SONOMA DO ORDAIN AS FOLLOWS:

"SECTION 1. Upon making a determination that there is a shortage of safe or sanitary dwelling accommodations available to persons of low income at rentals they can afford, the Board of Supervisors shall declare that there is a need for the Housing Authority of the County of Sonoma to function in accordance with the Housing Authorities Law.

"SECTION 2. Any declaration authorized by Section 1. shall be preceded by a noticed public hearing.

"SECTION 3. The Board of Supervisors shall be the governing body of the Housing Authority."

expense and delay occasioned by such a restraining order would be great. The court, however, retained jurisdiction to rule further on the merits.

On May 28, 1970, the court granted a peremptory writ of mandate ordering the county clerk to refrain from counting or canvassing the votes cast for or against the measure or from publishing or otherwise informing any other person of the vote count.[2]

On November 11, 1970, the Board, by resolution, determined that there was a need for the housing authority to function. Because of this action it would appear that the issues raised by the appeal may have been rendered moot. We have concluded that the issues are not moot. The issue here is whether the votes cast at the initiative election ought to be counted and the results of the election announced and published. As we perceive the situation the people were asked to vote on whether they desired an ordinance that provided the conditions upon which the Board could determine that there was a need for the housing authority. By that election the voters might have decided against such an ordinance. For the reasons hereinafter indicated, we are not concerned with the validity of such an ordinance if enacted or of its effect upon the action taken by the Board following the election wherein the Board determined that there was a need for the housing authority, notwithstanding their prior action of submitting to the voters the question whether the Board could make such a determination.

 Petitioner, relying on *Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550 [219 P.2d 457], contends that the determination whether there is a need for the housing authority to function is a matter solely for the Board and that such determination may not be controlled or influenced by popular vote. In essence petitioner contends that the proposed ordinance contravenes state law and therefore, if enacted, would be invalid.

We here observe that the relevant provisions of the pertinent statutes, known as the "Housing Authorities Law" (Health & Saf. Code, § 34200 et seq.), provide as follows: In each county and city there exists a housing authority. (Health & Saf. Code, § 34240.) The authority, however, "shall not transact any business or exercise its powers unless, by resolution, the governing body of the county or city declares that there is a need for an authority to function in it."[3] (Health & Saf. Code, § 34240.) "The govern-

---

[2]A motion for new trial was granted to permit the members of the Board, as individuals, and the county clerk, as an individual voter, to intervene as parties respondent. This was to permit them to assert that respondents had a First Amendment right to hear the opinion of the voters of the county with respect to the ballot measure and that respondent county clerk, as an individual voter, had the right to have his vote counted. After a hearing, the court adhered to its original ruling.

[3]"Governing body" in the case of a county means the board of supervisors. (Health & Saf. Code, § 34205.)

ing body may adopt a resolution declaring that there is need for a housing authority if it finds either of the following: (a) That insanitary or unsafe inhabited dwelling accommodations exist in the county or city. (b) That there is a shortage of safe or sanitary dwelling accommodations in such county or city available to persons of low income at rentals they can afford." (Health & Saf. Code, § 34242.) "In determining whether dwelling accommodations are unsafe or insanitary the governing body may take into consideration: (a) The degree of overcrowding. (b) The percentage of land coverage. (c) The light, air, space, and access available to the inhabitants of such dwelling accommodations. (d) The size and arrangement of the rooms. (e) The sanitary facilities. (f) The extent to which conditions exist in such buildings which endanger life or property by fire or other causes." (Health & Saf. Code, § 34243.)

In *Housing Authority, supra,* it was held that the resolution of the governing body declaring that there is a need for the housing authority to function is not subject to the operation of the referendum process because the actions of local governing bodies under statewide housing laws are administrative rather than legislative in nature. (35 Cal.2d at pp. 557, 559.) Accordingly, the court concluded that the governing body must proceed in the manner specified in the Housing Authorities Law. (At p. 558.) Under the court's rationale there can be no question that its holding would be equally applicable to the initiative process.

We note, however, that within six months of the decision in *Housing Authority* the California voters adopted article XXXIV of the state Constitution which provides that no low-rent housing project should be developed, constructed or acquired in any manner by a state public body until a majority of the qualified electors of the city, town or county in which it is proposed to develop, construct or acquire such project, voting on such issue, approve such project in an election held for that purpose, or at any general or special election. In *James* v. *Valtierra,* 402 U.S. 137 [28 L.Ed.2d 678, 91 S.Ct. 1331], this constitutional provision was held not to be violative of the federal Constitution. *James,* after noting that "California's entire history demonstrates the repeated use of referendums to give citizens a voice on questions of public policy" (at p. 141 [28 L.Ed.2d at p. 682]; see *Farley* v. *Healey,* 67 Cal.2d 325 [62 Cal.Rptr. 26, 431 P.2d 650]), observes that the referendum approval of low-rent public housing projects "ensures that all the people of a community will have a voice in a decision which may lead to large expenditures of local governmental funds for increased public services and to lower tax revenues. It gives them a voice in decisions that will affect the future development of their own community." (At p. 143 [28 L.Ed.2d at p. 683].)

*James* appears to question the holding in *Housing Authority* in view of the enactment of article XXXIV of the California Constitution. (402 U.S. at pp. 138-139 [28 L.Ed.2d at p. 681].) We observe that *Housing Authority* dealt with a resolution of a city council approving an application by the city housing authority to the federal Public Housing Administration for a loan to be used in the construction of low-rent public housing. The immediate question there was whether such a resolution could be put to a referendum vote.

■ In the present case we are dealing with the need for the housing authority to function, a determination which the Legislature has purported to place in the hands of the governing body. Article XXXIV of the California Constitution does not extend the power of the referendum to such a determination, but clearly restricts itself to the approval of the development, construction, or acquisition of low-rent housing projects. ■ It appears doubtful, therefore, that insofar as the instant issue is concerned, the rationale of *Housing Authority* has been repudiated or set aside by the enactment of article XXXIV.

In any event we need not here decide whether the holding in *Housing Authority* is applicable to the situation here presented or whether the Housing Authorities Law leaves the subject determination solely to the governing body. It is well settled that mandamus will not be issued to prevent the official recordation of the vote of the people under their reserved legislative power regardless of the apparent unconstitutionality of the measure, if any. (*Kevelin* v. *Jordan,* 62 Cal.2d 82, 83 [41 Cal.Rptr. 169, 396 P.2d 585]; *People* v. *Board of Supervisors,* 75 Cal. 179, 181-182 [16 P. 776]; *Wind* v. *Hite,* 58 Cal.2d 415, 417 [24 Cal.Rptr. 683, 374 P.2d 643].) As observed in *Wind,* courts "should not interfere with the exercise of the electorate's franchise for the purpose of determining the question of constitutionality, a matter which can, if necessary, be more appropriately passed upon after the election." (58 Cal.2d at p. 417.)

In *People* v. *Board of Supervisors, supra,* 75 Cal. 179, 180-182, it was held that an injunction would not lie to restrain the board of supervisors from announcing and publishing the result of an election held by their order upon the question of the removal of the county seat submitted to the electors of the county, on the ground that the election was illegally ordered by the board. Similarly, in *Kevelin* v. *Jordan, supra,* 62 Cal.2d 82, 83, it was held that mandamus would not be issued directing the Secretary of State not to file in his office a statement of the vote on a proposition submitted to the voters at a general election on the ground that the measure was unconstitutional.

In the instant case the initiative election has been held. All that remains to be done is for the county clerk to count and canvass the votes cast for or against the measure, and to announce and publish the result of the vote. This is a ministerial act which is enjoined by the writ issued in the court below. As pointed out above, mandamus does not lie to prevent the performance of such a ministerial act. In view of this conclusion and because the subject initiative measure was placed on the ballot and the election held, we need not discuss whether mandamus would have issued to prevent the placing of the measure on the ballot.

The judgment is reversed without prejudice to petitioner's right to challenge the validity of the measure in any appropriate proceeding if it is enacted and goes into effect.

Sims, J., and Elkington, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 19, 1972. Tobriner, J., did not participate therein.