[Civ. No. 4377.   Fourth Dist.   May 9, 1952.]

CLAUDE R. BLODGET, Appellant, v. HOUSING AUTHORITY OF THE COUNTY OF KERN et al., Respondents.

Roland S. Woodruff for Appellant.

Stewart, Shaw & Murphey for Respondents.

MUSSELL, J.—On March 13, 1951, appellant, as a taxpayer, filed a petition for a writ of mandamus against the Housing Authority of the county of Kern and its executive director to compel them to call an election in the city of Bakersfield to determine whether or not a majority of the electorate of the city approved the development, construction and acquisition of a low-rent housing project therein.

Article XXXIV, section 1, of the Constitution of the State of California, which became effective on *December 24, 1950,* and upon which petitioner bases his cause of action, is as follows:

"No low rent housing project shall hereafter be developed, constructed, or acquired in any manner by any state public body until, a majority of the qualified electors of the city, town or county, as the case may be, in which it is proposed to develop, construct, or acquire the same, voting upon such issue, approve such project by voting in favor thereof at an election to be held for that purpose, or at any general or special election.

"For the purposes of this article the term 'low rent housing project' shall mean any development composed of urban or rural dwellings, apartments or other living accommodations for persons of low income, financed in whole or in part by the Federal Government or a state public body or to which the Federal Government or a state public body extends assistance by supplying all or part of the labor, by guaranteeing the payment of liens, or otherwise. For the purposes of this article only there shall be excluded from the term 'low rent

housing project' any such project where there shall be in existence on the effective date hereof, a contract for financial assistance between any state public body and the Federal Government in respect to such project.''

Respondents filed an answer and counterclaim and in a cross-complaint sought declaratory relief. They alleged in substance that an actual controversy existed between the parties as to the rights, duties and obligations of respondents to obtain the approval of the majority of the electorate as a condition precedent to the further development, construction and operation of the housing projects involved. Respondents alleged that there was no duty to obtain approval of the electorate of said city and county of the said projects by reason of the existence of a valid contract for financial assistance between the Housing Authority of the county of Kern (hereinafter referred to as the housing authority) and the Public Housing Administration (hereinafter called P.H.A.) on the effective date of the adoption of the said constitutional amendment. Respondents further alleged that if the said constitutional provision be construed as requiring an election in the city of Bakersfield or the county of Kern as to said projects, then the provision was unconstitutional under article 1, section 10, clause 1, of the Constitution of the United States as an impairment of the obligations of contracts entered into by the housing authority, the P.H.A. and the county of Kern.

The petitioner alleged and contended that there was no contract for ''financial assistance'' in existence on the effective date of the constitutional provision and that even if said provision be interpreted as requiring the approval of the electorate in said city and county as to the projects involved, there would be no impairment of the obligations of the contracts with the P.H.A. and the county of Kern.

There is no dispute as to the pertinent facts. The Housing Authority of the county of Kern was created by the enactment of the housing authority laws (Stats. Ex. Sess. 1938, ch. 4, p. 9) embodied in Act 3483 of the General Laws of the State of California and by resolution of the Board of Supervisors of the county of Kern, dated May 10, 1949. The United States Housing Act of 1937, as amended, authorized the public housing administration of the United States to give financial assistance to local governments for the development, acquisition, or administration of slum-clearance and low-rent housing projects. The assistance may be in the form of a grant or a loan for the making of preliminary investigations, surveys,

planning and grants or loans for the acquisition, construction and operation of such projects.

On August 22, 1949, the Kern County Board of Supervisors adopted a resolution authorizing and approving an application by the housing authority to P.H.A. for a preliminary loan contract for $130,000 to cover the cost of surveys and planning in connection with the development of 750 units of low-rent housing in the county of Kern and declaring its intention to thereafter enter into a cooperation agreement with the housing authority. On September 19, 1949, the housing authority applied to the P.H.A. for a program reservation for 350 units of low-rent housing project or projects, known as Cal 8-A, to be located in the county of Kern. In this application the housing authority represented that, if a program reservation was made by P.H.A., it would in good faith expeditiously proceed with the provision for the low-rent housing requested. On October 19, 1949, the P.H.A. issued its program reservation for 350 units of low-rent housing known as No. Cal 8-A and declared its intention to enter into a preliminary loan contract in the amount of $115,000 and to reserve a loan in that amount, and annual contribution funds sufficient to provide required financial aid for the number of low-rent dwelling units covered by the reservation. On *January 18, 1950,* the commissioners of the housing authority adopted a resolution authorizing the execution of a loan contract with P.H.A. in the sum of $115,000 to enable the housing authority to make surveys and plan the construction of 350 low-rent houses and improvements, and for the acquisition of property, fixtures and furnishings therefor in the county of Kern. Concurrently with the last mentioned resolution, the housing authority executed a preliminary loan contract with P.H.A. in which the housing authority proposed to develop low-rent housing projects with financial assistance from P.H.A. pursuant to the United States Housing Act of 1937, as amended. The housing authority agreed to undertake preliminary surveys and planning necessary for the preparation and submission of preliminary and final development programs for each project. The P.H.A. agreed therein to loan the housing authority the sum of $115,000, of which $23,000 was to be advanced immediately, upon the execution of the agreement, for use in preliminary surveys and planning for low-rent housing projects in the county of Kern. It was agreed that the cost of said surveys and planning would be a part of the total development cost of the projects and

included in any annual contribution contracts executed. The housing authority further agreed to complete the surveys and planning and to provide necessary architectural and engineering surveys, qualified surveys of experts for obtaining land surveys, title information and appraisals for each project to be developed.

On February 2, 1950, the housing authority procured a loan from P.H.A., one in the sum of $23,000, and on September 28, 1950, procured another loan in the sum of $21,000 under said preliminary loan contract and executed and delivered to P.H.A. two promissory notes for said loans. On January 26, 1950, the Board of Supervisors of the county of Kern adopted a resolution authorizing the execution of a cooperation agreement with the housing authority in connection with the program reservation for 400 units of low-rent housing in the county and on *July 12, 1950*, executed the agreement with the county. In the executed cooperation agreement the housing authority agreed to develop and administer one or more low-rent housing projects and the county agreed to furnish the housing authority and the tenants of each project with public survey facilities and agreed to repair streets, to furnish street lighting, sewer services, to accept dedication of streets and to cooperate with the housing authority in the development of the projects.

The original program reservation, Cal 8-A, for 350 units of low-rent housing, as provided in the preliminary loan contract was subsequent to the execution of said contract, divided into two projects designated as Cal 8-5 and Cal 8-6, and on *December 26, 1950*, the city of Bakersfield adopted an ordinance approving the annexation of real property to the city upon which the housing authority intended to construct housing project 8-6. The city then gave its consent to the housing authority to operate and transact business in the city, approved the development and construction of 250 housing units and approved a preliminary loan for surveys and planning thereof. The city and the housing authority then entered into a cooperation agreement and on February 19, 1951, the housing authority completed its final development program for the construction and acquisition of 244 housing units, known as Cal 8-6.

On or before *December 24, 1950*, the effective date of article XXXIV of the state Constitution, the housing authority had expended, in the development of projects Cal 8-5 and 8-6 the sum of $9,982.96 in technical and nontechnical wages,

legal and travel expense, overhead, interest, housing surveys, planning costs, construction and equipment, and had authorized the employment of engineers, architects and economists for the making of plans and surveys. After December 24, 1950, the housing authority had expended $25,972.67 for the same purposes and in addition thereto, had expended approximately $10,000 for surveys and maps, appraisals, title information and option negotiations for the site acquisition of project Cal 8-6, and for appraisals in connection with project Cal 8-5.

It is admitted that no election has been held within the city of Bakersfield, as provided in article XXXIV, section 1, of the state Constitution. The principal question involved is whether, on December 24, 1950, there was in existence a valid contract for financial assistance between the housing authority and P.H.A. for the development of projects Cal 8-5 and 8-6 within the exception stated in article XXXIV of the state Constitution. We conclude that this question must be answered in the affirmative.

■ Appellant first argues that the term "low-rent housing project," as defined in the constitutional exception, must be interpreted as meaning an existing tangible group of dwellings, apartments or other living accommodations. This contention is without merit. A "low-rent housing project" is defined in the constitutional provision as any "development" composed of urban or rural dwelling, apartments, or other living accommodations for persons of low income. The word "development" is defined in title 42, section 1402(5) of the United States Housing Act of 1937, as amended, as follows:

"The term 'development' means any or all undertakings necessary for planning, land acquisition, demolition, construction, or equipment, in connection with a low-rent housing project."

Section 1409 of said act, as amended, authorizes the P.H.A. to make loans to public housing agencies, to assist in the development, acquisition or administration of low-rent housing or slum clearance projects by such agencies.

Section 21 of the Housing Authorities Law of California provides:

"In addition to the powers conferred upon an authority by other provisions of this act, an authority is empowered to borrow money or accept grants or other financial assistance from the Federal Government for or in aid of any housing project within its area of operation, . . . It is the pur-

pose and intent of this act to authorize every authority to do any and all things necessary or desirable to secure the financial aid or cooperation of the Federal Government in the undertaking, construction, maintenance or operation of any housing project by such authority.''

Section 3 (i) of said law, in defining ''housing project,'' states in part as follows:

'' '*Housing project*' shall mean any work or undertaking to be financed in whole or in part by the Federal Government or to which the Federal Government extends assistance by supplying all or part of the labor, by guaranteeing the payment of liens or otherwise: . . . to provide decent, safe and sanitary urban or rural dwellings, apartments or other living accommodations for persons of low income . . . The term ''housing project'' also may be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration and repair of the improvements and all other work in connection therewith.''

It seems clear that the term ''development,'' as defined, means any and all undertakings necessary for the planning, financing, land acquisition and construction of low-rent housing projects; that the term ''housing project'' may be applied to the planning of buildings and improvements or the acquisition of property. It is not necessary, as contended by appellant that there be in existence a tangible building or buildings on a definitely located site to authorize the execution of a valid contract for financial assistance within the meaning of the constitutional exception.

■ The trial court found that the preliminary loan contract of June 18, 1950, executed by the Housing Authority and P.H.A. is a valid contract for ''financial assistance'' between the parties to it, within the meaning of the exception of the constitutional provision. This finding is supported by substantial evidence and cannot here be disturbed.

■ In the loan contract, the housing authority proposed to develop low-rent housing projects ''with financial assistance'' from P.H.A. and agreed to undertake preliminary surveys and planning necessary for the preparation and submission of preliminary and final development programs for each project, serving as the basis for applications for annual contribution contracts. It was agreed that the cost of the surveys and planning would be a part of the total development cost of such projects. The P.H.A. agreed

therein to lend the housing authority $115,000, of which $23,-000 was to be advanced immediately for use in such preliminary surveys and planning. This agreement was clearly a contract for "financial assistance" pursuant to which the P.H.A. loaned substantial sums of money to the housing authority which sums were expended by it in accordance with the provisions of said contract.

It is our conclusion that, under the circumstances presented by the record before us, the provisions of article XXXIV, section 1, of the state Constitution do not require that an election be held prior to the actual construction of the low-rent housing projects involved. Since we have reached this conclusion, it is not necessary to pass upon the question as to whether the trial court erred in declaring (as set forth in paragraph (B) 2. of the judgment) that if the constitutional provision were to be interpreted so as to require the approval of the electors as a condition precedent to the further development and construction of the projects involved, then the said provisions of the Constitution would be unconstitutional under article I, section 10, clause 1 of the Constitution of the United States as an impairment of the contracts here involved.

The petition herein seeks a writ of mandamus against the respondents, Housing Authority of Kern County and Fred Widmer, its executive director, to compel them to call an election in the city of Bakersfield as provided in the state Constitution. The City Council of Bakersfield and the Board of Supervisors of Kern County are not made parties to the proceedings and our attention has not been directed to any authority, duty or power of respondents to call or conduct such an election.

The judgment denying a writ of mandamus is affirmed.

Barnard, P. J., and Griffin, J., concurred.