[Civ. No. 19342.   Second Dist., Div. Three.   Mar. 20, 1953.]

HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, Respondent, v. VIDA SHOECRAFT et al., Defendants; GERONIMO J. TORRES et al., Appellants.

[Civ. No. 19343.   Second Dist., Div. Three.   Mar. 20, 1953.]

HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, Respondent, v. RECORD SEARCHING TITLE COMPANY (a Corporation) et al., Defendants; PASCUAL JERAMILLO et al., Appellants.

814

G. G. Baumen for Appellants.

Paul, Hastings & Janofsky, Leonard S. Janofsky, Loeb & Loeb, Allen E. Susman and Herman F. Selvin for Respondent.

VALLÉE, J.—Appeals by a number of the defendants from the interlocutory judgments in two actions brought by plaintiff to condemn the fee title to real property for use as a site for the construction and operation of a low-rent housing project. The actions were consolidated for trial. Separate findings were made and interlocutory judgments entered. The

appeals are submitted on settled statements; one set of briefs; and will be decided in one opinion.

The complaints are each in three counts. The first alleges that the public interest and necessity require the acquisition of the property for use as a site for the construction and operation thereon of a low-rent housing project to provide living accommodations for persons or families who lack the amount of income necessary to enable them to live in decent, safe, and sanitary dwellings without overcrowding. The second alleges that the public interest and necessity require the acquisition of the property for slum clearance. The third alleges the public purpose to be slum clearance and development of low-rent public housing. The parties stipulated as to the market value of the property.

The court found that the public interest and necessity require the acquisition of the fee title to the property. It further found the property is being acquired for the following public purposes: (a) for use as a site for the construction and operation thereon by plaintiff of a low-rent housing project, as alleged in the first count of the complaints; (b) to demolish, clear, or remove buildings from the area in which said real property is situated, which area is detrimental to the safety, health and morals of the people by reason of the dilapidation, overcrowding, faulty arrangement or design, lack of ventilation or sanitary facilities of the dwellings predominating thereon; and, (c) for both of those purposes. It also found that prior to the commencement of the actions the commissioners of plaintiff duly and regularly adopted a resolution which declared that the acquisition of the property is necessary for the public purposes found, and that the project had been approved by the city council of the city of Los Angeles. It further found that: within the area of operation of plaintiff ''there are persons who lack the amount of income which is necessary to enable them to live in decent, safe and sanitary dwellings without overcrowding''; the area in which the property is situated ''is detrimental to the safety, health and morals of the people by reason of dilapidation, overcrowding, faulty arrangement or design, lack of ventilation or sanitary facilities of the dwellings predominating thereon''; and, the project is planned and located in the manner which will be most compatible with the greatest public good and the least private injury.

Pursuant to the Rules on Appeal (Rule 7(a)), the settled statements say the points raised by defendants on the appeals

are: (1) Plaintiff is without power to condemn the property since it has not complied with the applicable statutory requirements, which are conditions precedent to such power and the exercise thereof; (2) There was no showing by plaintiff that the taking is necessary for any authorized or lawful use.

Plaintiff is a public corporation. (Health & Saf. Code, § 34310.) It is empowered to engage in the development, construction, and operation of low-rent public housing projects, subject to the requirement that the governing body of the city of Los Angeles approve any project by resolution. (*Idem.* §§ 34312, 34313.) It has the power to acquire, pursuant to the Code of Civil Procedure, any real property *"which it deems necessary for its purposes* . . . after the adoption by it of a resolution declaring that the acquisition of the real property described in it is necessary for such purposes." (*Idem.* §§ 34325, 34315(d). Italics added.) Section 1238(21) of the Code of Civil Procedure provides that the right of eminent domain may be exercised in behalf of any work or undertaking of a housing authority "(a) to demolish, clear or remove buildings from any area which is detrimental to the safety, health and morals of the people by reason of the dilapidation, overcrowding, faulty arrangement or design, lack of ventilation or sanitary facilities of the dwellings predominating in such areas; or (b) to provide dwellings, apartments or other living accommodations for persons or families who lack the amount of income which is necessary (as determined by the body engaging in said work or undertaking) to enable them to live in decent, safe and sanitary dwellings without overcrowding."

■ Defendants first assert that the project has not been approved by the city council of Los Angeles. The evidence established that it had been approved. One of these actions was commenced April 20, 1951, the other May 11, 1951. On August 8, 1949, the council adopted an ordinance by which it approved the development, construction, and operation of a low-rent housing project or projects consisting of approximately 10,000 dwelling units. On August 17, 1950, plaintiff sent a letter to the council stating it had selected 12 sites, among them a site on the properties sought to be condemned in these actions. The letter listed the sites and a map of each was attached. On November 16, 1950, plaintiff sent a letter to the council in which it advised that one site had been abandoned and the boundaries of several others

revised. The letter requested that the proposal of plaintiff to acquire the land comprising the 11 sites described on attached maps, including the site involved here, be approved. On November 22, 1950, the council, by resolution, approved the proposal of plaintiff. These acts of the council constituted approval of the project in compliance with the statute.[1] (*Housing Authority* v. *City of Los Angeles,* 38 Cal.2d 853 [243 P.2d 515]; *Drake* v. *City of Los Angeles,* 38 Cal.2d 872 [243 P.2d 525].)[2]

Defendants next assert that the project is barred by article XXXIV of the Constitution, added in 1950, which requires approval of a majority of the electors of a city as a prerequisite to the establishment of any low-rent housing project. The point has no merit. Article XXXIV specifically excludes from its operation any project "where there shall be in existence on the effective date hereof (December 24, 1950), a contract between any state public body and the Federal Government in respect to such project." (Stat. 1951, p. CXXIV.) The evidence shows that such a contract between plaintiff and the federal government was in existence on the effective date of article XXXIV. (See *Blodget* v. *Housing Authority,* 111 Cal.App.2d 45 [243 P.2d 897].)

It is next asserted that this project cannot be considered a slum clearance project because there is no evidence that the city council approved a slum clearance project. The approval of the council expressly declared that it was given pursuant to section 8(b) of the Housing Authorities Law. (Now Health & Saf. Code, § 34313.) The approval was of a "housing project" as that term is defined in the Housing Authorities Law. At the time the project was approved, that law in relevant part defined a "housing project" as "(1) to demolish, clear or remove buildings from any slum area; . . . or (2) to provide decent, safe and sanitary urban or rural dwellings, apartments or other living accommodations

---

[1]The Housing Authorities Law was incorporated in the Health and Safety Code in 1951. (Stats. 1951, ch. 710, § 1, p. 1947.) At the time these proceedings were had, section 34313 of the Health and Safety Code was in Stats. Ex. Sess. 1938, ch. 4, § 8, p. 14, as amended by Stats. 1945, ch. 766, § 1, p. 1450.

[2]The details of the proceedings had and the actions taken by plaintiff and the city council of Los Angeles are set out in *Drake* v. *City of Los Angeles\*,* (Cal.App.) 238 P.2d 1062.

\*A hearing was granted by the Supreme Court on February 14, 1952. The final opinion of that court is reported in 38 Cal.2d 872 [243 P.2d 525].

for persons of low income; . . . The term 'housing project' also may be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration and repair of the improvements and all other work in connection therewith." (2 Deering's Gen. Laws, Act 3483, § 3(i), 1949 Supp.; now Health & Saf. Code, § 34212.) It is patent that the action of the council carried with it approval of slum clearance on the sites approved as well as the construction of improvements on them.

As we have noted, section 1238(21b) of the Code of Civil Procedure provides that the right of eminent domain may be exercised to provide dwellings, apartments, or other living accommodations for persons or families "who lack the amount of income which is necessary (as determined by the body engaging in said work or undertaking) to enable them to live in decent, safe and sanitary dwellings without overcrowding." Defendants contend it was necessary in order that plaintiff have judgment that it prove "what income was necessary for persons to earn to permit them to live in decent housing without overcrowding." They argue that plaintiff presented no evidence "as to what rent actually will be charged in this specific project and what income groups the project will cater to and what income is necessary to permit a person to live in decent housing without overcrowding." They concede that plaintiff "is to determine who are the persons who lack the amount of income which is necessary to enable them to live in decent housing." ▓▓ Section 1238 does not prescribe a procedural condition precedent to maintenance of the action. It merely enumerates the public uses for which the right of eminent domain may be exercised. (*Reclamation Dist.* v. *Superior Court*, 151 Cal. 263, 267 [90 P. 545].) ▓▓ The clause in question is descriptive of one of the public uses for which plaintiff may exercise the right. The intimation that plaintiff must fix the rents for the various units in a project in advance of instituting an action to condemn, borders on the preposterous. Many factors enter into the fixing of rents, and they vary from time to time. The statute does not require such a determination. If, as defendants contend, it was essential that plaintiff determine in advance of beginning the actions "what income groups the project will cater to and what income is necessary to permit a person to live in decent housing without overcrowding," such determination was made. It appears without

contradiction that on June 19, 1950, the commissioners of plaintiff adopted a resolution determining the maximum net family income limits for admission to the project, which were found to be at least 20 per cent below the income level at which families can afford decent, safe, and sanitary housing accommodations, and the maximum net family income limits for continued occupancy, which were found to be at the level at which families can afford such housing accommodations.

Defendants next say their property is not sought for any authorized or lawful public use. The contention is wholly without merit. Defendants call the public housing program "socialized housing," and say it is "predicated upon Article 6 of the Constitution of the Union of Soviet Socialistic Republics." Whatever one's philosophical, social, or political views on the subject may be, this question has long since been laid to rest. *Housing Authority* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794], held without equivocation that public housing projects for low-income families and slum clearance are public uses and purposes for which public money may be expended and private property acquired.

Pursuant to section 956a of the Code of Civil Procedure plaintiff made application to this court to produce as additional evidence the resolution of its commissioners, adopted June 19 ,1950, fixing maximum income limits. The motion is granted.

The interlocutory judgment in each action is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied April 6, 1953, and appellants' petition for a hearing by the Supreme Court was denied May 14, 1953. Schauer, J., was of the opinion that the petition should be granted.