[Civ. No. 4656. Fourth Dist. Mar. 8, 1954.]

GERALD LOCKHART et al., Appellants, v. CITY OF BAKERSFIELD et al., Respondents.

Siemon & Siemon for Appellants.

Charles Carlstroem, City Attorney, for Respondents.

MUSSELL, J.—Plaintiffs appeal from a judgment of dismissal entered after the demurrer of defendants city of Bakersfield, Leland Gunn, Justus A. Olssen and Marian S. Irvin was sustained without leave to amend. The action was for injunc-

tion against the city and its executive officers to prevent alleged irregular and unauthorized zoning and other action. The principal question involved is whether the city may by resolution rezone a portion of the city while its ordinance rezoning the same portion of the city was suspended by referendum.

The area involved herein was zoned as an R-1 (one-family residential) district and was duly rezoned as a two-family residential district by ordinance No. 953, New Series, on September 29, 1952. A referendum petition was thereafter filed requiring the submission of this ordinance to the voters and the city council fixed the date of the referendum election for March 24, 1953.

On December 29, 1952, the city council, pursuant to the Housing Cooperation Law (Health & Saf. Code, §§ 34500-34521, incl.) adopted a resolution (No. 66-52) relating to cooperation with the Housing Authority of the County of Kern in the development of low-rent housing project No. CAL-8-6. It is recited therein that on January 22, 1951, the city consented that the Housing Authority operate in the city and thereafter authorized the execution of a cooperation agreement with the said authority; that on January 29, 1951, the city council approved the development of a housing project which was planned at that time for development in a then recently annexed area of the city known as the "Sunset-Mayflower District" and thereafter proceeded with plans and specifications and undertook to acquire title to the site for the development of the dwelling unit identified as "project CAL-8-6"; that the "Sunset-Mayflower District" was not subject to city zoning at the time the Housing Authority sought and obtained the approval of the planning commission for the development of the project therein; that the city council at about the time the Housing Authority commenced the acquisition of the lands for the project and without considering that fact, adopted ordinance No. 923, New Series, on September 17, 1951, to restrict all development in the newly annexed area to single-family residential structures until necessary studies were made to properly classify the entire district; that upon approval by the city of the project, the Housing Authority acquired the site for the project and expended considerable sums for the preparation of plans and specifications therefor; that on October 27, 1952, the city council reaffirmed the said cooperation agreement; that reduction in the land area of the site makes possible the development on the remainder of approximately 184 dwelling

units of duplex construction; that certain changes in streets and alleys were agreed upon; that the Housing Authority submitted to the council a map of the revised project site plan; that the cooperation agreement of January 29, 1951, contains an agreement on the part of the city to make such changes in any zoning of the site and surrounding territory of such project as are reasonable for the development and protection of such project and the surrounding territory; that the city council finds that a change in the interim zoning of that part of the "Sunset-Mayflower District" described in the resolution to permit the construction of duplex units and other buildings is reasonable and necessary for the development and protection of the low-rent housing project and the surrounding territory. The city council then approved the development of the said 184 dwelling units on the site, approved the said revised map, and agreed to the improvements shown thereon. It was then resolved "That pursuant to the Housing Authorities Law and Housing Cooperation Law of the State of California, the site hereinafter described is hereby rezoned to permit the construction of duplex dwellings, and administration and maintenance building and yard and a community hall, and the City Council of the City of Bakersfield, pursuant to the laws referred to, expressly approves the site hereinafter described for the development of approximately 184 dwelling units of the low-rent housing project known and described as Project CAL-8-6 of the Housing Authority of the County of Kern." It was further resolved that the use of the lands described therein for the public buildings to be developed by the Housing Authority is necessary and that the proposed low-rent housing project will not be injurious to property, and will not be detrimental to the health and general welfare of persons residing or working in the neighborhood of the project and "that this Resolution, adopted in furtherance of the City's obligation under the Cooperation Agreement of January 29, 1951, and pursuant to the Housing Cooperation Law of the State of California, shall take effect immediately and shall supersede any existing ordinance or resolution inconsistent or at variance with the provisions of this Resolution."

In January, 1951, the city consented that the Housing Authority operate in the city of Bakersfield and authorized the execution of a cooperation agreement with the authority approving the development of a housing project. Pursuant

to this agreement, the Housing Authority acquired the site involved and expended considerable sums for the preparation of plans and specifications therefor. (*Blodgett* v. *Housing Authority,* 111 Cal.App.2d 45, 49 [243 P.2d 897].) The city approved the development of 184 dwelling units on the site and rezoned the property by resolution under the provisions of section 34521 of the Health and Safety Code.

The Housing Authorities Law and the Cooperation Agreement Law of the State of California were held to be constitutional in *Housing Authority* v. *City of Los Angeles,* 38 Cal.2d 853, 861 [243 P.2d 515], and in *Housing Authority* v. *Superior Court,* 35 Cal.2d 550, 558 [219 P.2d 457], it is said that the court in determining that said law was constitutional necessarily established that its public purpose and policy was to be effective throughout the state; that "the act also prescribed the powers, duties and obligations of the authority and of the city in carrying out its salutary purposes. Every necessary legislative act was completed by the Legislature. There was nothing left to do except to administer the law . . . to gain those advantages the city must proceed in the manner specified in the act. Furthermore, since the statute is the only authority under which the city may act in the premises, and the subject matter of the action is more than local concern, the city is bound to proceed in accordance therewith." It was further held that the actions of the local governing bodies under the statewide housing laws are administrative only for the purpose of giving statewide effect to the declared legislative policy.

In *Housing. Authority* v. *City of Los Angeles, supra,* 862, it was held that the city of Los Angeles, under the Housing Authorities Law, is an agency of the state, functioning under the state law to fulfill state purposes, and is not acting pursuant to its fundamental law to effect solely municipal objectives; that upon the formation of the Housing Authority the state law thereupon and thereafter controlled the city and the Housing Authority and no other law concerning the acquisition, operation or disposition of property is applicable to the Authority except as specifically provided; that the city, having taken the initial discretionary action to bring the Housing Authority into operation and having approved a project and entered into a cooperation agreement, there was nothing left to be done by either contracting party but to perform administratively whatever was necessary to carry the agreement into effect.

In the instant case, after the city entered into a binding cooperation agreement in accordance with the housing law and cooperation agreement law and the Housing Authority had acquired the site involved and had expended funds for plans and specifications, there was nothing left for the city to do except to administer the law. This it did by rezoning the property by resolution authorized by section 34521 of the Health and Safety Code, which provides as follows:

"*Procedure for exercise of powers.* The exercise by a state public body of the powers granted in this chapter may be authorized by resolution of its governing body adopted by a majority of the members present at a meeting. The resolution may be adopted at the meeting at which it is introduced. The resolution shall take effect immediately and need not be laid over, published, or posted."

Prior to the adoption of the resolution involved the city had passed an ordinance rezoning the property in the same manner. A referendum petition requiring the submission of this ordinance to the voters was filed, an election was called, and a date fixed for such election. Appellant argues that by reason thereof the city was thereby deprived of legislative power pending the referendum to deal with the subject by reenactment of the suspended ordinance or to take other action of substantially the same effect; that section 34521 of the Health and Safety Code merely authorizes the city to take jurisdiction of a housing project by resolution, leaving succeeding procedures to be governed by existing laws and regulations and subject to applicable ordinances; that the resolution involved was violative of section 34326 of the Health and Safety Code, which provides:

"*Planning, Zoning and Building Laws.* All housing projects are subject to the planning, zoning, sanitary, and building laws, ordinances, and regulations applicable to the locality in which the housing project is situated. In the planning and location of any housing project, an authority shall take into consideration the relationship of the project to any larger plan or long-range program for the development of the area in which it functions."

We do not agree with appellants' contentions. ■ The city of Bakersfield, acting under the provisions of the State Housing Law and the Housing Authorities Law, is an agency of the state, functioning under state law to fulfill state purposes and is not acting pursuant to its fundamental law to effect solely municipal objectives. (*Housing Authority* v.

*City of Los Angeles, supra,* 862.) Under sections 34511 and 34512 of the Health and Safety Code the city may cause parks, playgrounds, recreational, community, educational, water, sewer or drainage facilities, or any other works which it is otherwise empowered to undertake, to be furnished adjacent to or in connection with housing projects, and may furnish, dedicate, close, pave, install, grade, regrade, plan, or replan streets, roads, roadways, alleys, sidewalks, or other places which it is otherwise empowered to undertake. Section 34513 provides that a state public body may: (a) Plan or replan, zone or rezone any part of its territory; and (b) Make exceptions to building regulations and ordinances. These granted powers are not made subject to referendum filed by the electorate of the city. Under the provisions of section 34326 of the Health and Safety Code housing projects are subject only to such zoning laws as are applicable to the locality in which the housing project is situated and in the instant case the city may not be restrained from performing the administrative acts required of it by state law. The referendum, therefore, is inapplicable to prevent the performance of the cooperation agreement by the city.

Appellant cites *Drake* v. *City of Los Angeles,* 38 Cal.2d 872 [243 P.2d 525], in support of his contentions. However, in that case the factual situation here presented was not before the court. The plaintiff there sought an injunction to restrain the city and Housing Authority from proceeding with the housing project by an ordinance which had not been submitted to the planning commission for report and recommendation. The court held that there was no provision in the statute requiring submission or report to the planning commission prior to the city's approval of the project and dismissed the action. It was therein stated that the housing authority was required by section 34326 of the Health and Safety Code to conform the plans for location, use, sanitary improvements and building restrictions to the laws and ordinances applicable in the locality selected. However, it was also held that:

"Section 34320 of the Housing Authorities Law provides that no law concerning the acquisition, operation, or disposition of property by other public bodies is applicable to the housing authority unless the Legislature specifically so states. The provisions of the charter and of the state conservation and planning act apply to the property which is the subject

thereof, namely, city acquired, owned and operated public sites and buildings. (Const., art. XI, § 6; see, also, *Riedman* v. *Brison*, 217 Cal. 383-387 [18 P.2d 947].) The property and projects contemplated under the Housing Authorities Law are those to be acquired, developed, constructed, owned and operated by the housing authority, and are governed by that statute except as otherwise specifically required. The local law governing the acts and authority of the city council as to slum-clearance and low-rent housing projects has been superseded by the statute. (*Housing Authority* v. *Superior Court*, 35 Cal.2d 550 [219 P.2d 457].)''

It was further held that the city is vested with power to zone or rezone and make exceptions to building regulations and that ''The exercise of any of the granted powers is authorized to be taken by resolution of the city council adopted by a majority of the members present at a meeting. The resolution may be adopted at the meeting at which it is introduced, is to take effect immediately and need not be laid over, published or posted. (Health & Saf. Code, § 34521.)''

In the instant case the statute does not provide that zoning or rezoning ordinances or resolutions adopted pursuant to the state housing laws are subject to the referendum provisions of the city charter and such provisions are therefore inapplicable.

Judgment affirmed.

Barnard, P. J. and Griffin, J., concurred.