[Civ. No. 33037. First Dist., Div. One. June 21, 1974.]

PETER B. VALENTINE, Plaintiff and Respondent, v.
TOWN OF ROSS et al., Defendants and Appellants.

## COUNSEL

Riede, Elliott, Brekhus & Riede and Peter B. Brekhus for Defendants and Appellants.

Douglas J. Maloney, County Counsel (Marin), Thomas G. Hendricks, Chief Deputy County Counsel, and Allen A. Haim, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Ferguson & Capron and Douglas P. Ferguson for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—In mandate proceedings commenced by Peter B. Valentine the superior court directed appellants Town of Ross and Virginia Stott, its clerk, to repeal the town's Resolution 901 or "submit it to a vote of the electorate, per Election Code sections 4051 and 4052," dealing with the people's right of referendum. The appeal is from the judgment directing the peremptory writ to issue.

We have concluded that the judgment must be reversed, and for the reasons we now state.

Resolution 901 was an act of the Town Council of the Town of Ross (hereafter Town Council), approving certain "plans as to Unit #4" of the Corte Madera Creek Project of the Marin County Flood Control and Water Conservation District (hereafter sometimes the "District"), Zone Number 9.

The basic material facts of the case are not in dispute.

Corte Madera Creek flows from the hills of Marin County through Ross Valley and into San Francisco Bay. It is subject to periodic flooding, particularly when heavy rainfall coincides with high ocean tides. Since Ross

Valley is a heavily populated portion of the county, such floods often result in extensive damage to homes and other property. For a relatively short part of its length the stream flows through the Town of Ross.

The Legislature has "declared that the people of the State have a primary interest in the control and conservation of flood waters, . . ." (Wat. Code, § 12578.)

The state has shown a special interest in the construction of a flood control project on Corte Madera Creek (see Wat. Code, § 12734; and see Wat. Code—Appendix, ch. 68). Congress has also found a public interest in the flood control of the stream; in 1962 it authorized the Army Corps of Engineers to undertake such a project. (76 Stat. 1173, Public Law 87-874.)

In 1965, the Legislature directed that: "The Marin County Flood Control and Water Conservation District, in conjunction with the Department of the Army, shall execute the plans and project" generally worked out by the Army Corps of Engineers for flood control of Corte Madera Creek. (See Wat. Code, §§ 12734, 12735, 12736.)

The District (see Wat. Code—Appendix, ch. 68) is funded principally by federal and state contributions. As to its "Ross Valley Unit" it is required that local interests shall contribute but 3 percent of the federal constructions costs. (Wat. Code, § 12734.)

In 1967 the Town Council adopted its Resolution 780. By this resolution it consented to "annexation of the Town to Marin County Flood Control and Water Conservation District Zone Number 9 (Ross Valley)." Additionally, as permitted by law, the resolution provided that "the within concurrence and consent is subject to the following express conditions:

"That the Town of Ross, in approving the schematic plans submitted by the Corps of Engineers, as aforesaid, shall retain an absolute right to consider and review any detailed plans for construction proposed within the Town limits, and such construction shall not be commenced unless and until the Town Council has approved the design thereof in writing."

The Town Council in three steps, August 1969, October 1969 and May 1970, considered, reviewed and approved detailed plans for construction proposed within the town limits of the first phase of the project. Work in the first phase was substantially completed by the District; it consisted of a concrete channel some 700 feet in length.

Thereafter the District submitted additional plans to the Town Council, "said plans covering the horizontal alignment of the concrete channel, the cross-section of the channel, the boundaries of permanent and construction rights of way, the type of a transition structure and designating the trees to be saved and those to be lost."

By Resolution 901 the Town Council, as relevant, resolved: "That the aforesaid plans as to Unit #4 that have been presented are hereby approved, subject to: a. Construction easements should be restricted to conform to the excavation and backfill limits of the structure; b. The proposed permanent access right of way near Station 383 is subject to review."

As we have indicated, Resolution 901 became the subject of the referendum proceedings here under consideration. The question before the superior court, and now before us, is whether that resolution was, as a matter of law, subject to the referendum process.

The acts, ordinances and resolutions of a municipal governing body may, of course, be legislative in nature or they may be of an administrative or executive character. (*Hopping* v. *Council of City of Richmond,* 170 Cal. 605, 610 [150 P. 977].) ■ It is now settled in this state that "[t]he power of referendum may be invoked only with respect to matters which are strictly legislative in character . . . ." (*Wheelright* v. *County of Marin,* 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537] [cert. den., 400 U.S. 807 (17 L.Ed.2d 37, 91 S.Ct. 65)].) Administrative or executive acts of such a body are beyond the reach of the referendum process. (See *Pacific Rock etc. Co.* v. *City of Upland,* 67 Cal.2d 666, 668-669 [63 Cal. Rptr. 572, 433 P.2d 476]; *Simpson* v. *Hite,* 36 Cal.2d 125, 129 [222 P.2d 225]; *Hughes* v. *City of Lincoln,* 232 Cal.App.2d 741, 744 [43 Cal. Rptr. 306]; *Martin* v. *Smith,* 184 Cal.App.2d 571, 574 [7 Cal.Rptr. 725].)

Also well settled is the distinction between the exercise of local legislative power, and acts of an administrative nature.

Following earlier authority, we said in *Martin* v. *Smith, supra,* 184 Cal. App.2d 571, 575: " ' "The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it." ' " (See also 5 McQuillin on Municipal Corporations (3d ed.) pp. 213-214); we also said (184 Cal.App. 2d at p. 575): "Acts constituting a declaration of public purpose, and making provisions for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative power. Acts

which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence." (See also *Hughes* v. *City of Lincoln, supra,* 232 Cal.App.2d 741, 744-745; *Reagan* v. *City of Sausalito,* 210 Cal.App.2d 618, 621-622 [26 Cal.Rptr. 775]; *Fletcher* v. *Porter,* 203 Cal.App.2d 313, 321 [21 Cal.Rptr. 452]; *McKevitt* v. *City of Sacramento,* 55 Cal.App. 117, 124 [203 P. 132].)

The Town of Ross concedes that Resolution 780, by which it joined the District and approved the schematic plans prepared by the Army Corp of Engineers, reserving only the right of its Town Council "to consider and review [and approve] any detailed plans for construction proposed within the Town limits," was a legislative act of the Town Council. But it argues that the three later successive resolutions, of which the last was the contested Resolution 901, approving the District's finalized plans, were administrative acts to which the referendum process was inapplicable.

Plaintiff Valentine, on the other hand, insists that "the original Resolution No. 780, to the extent that it 'legislated' a flood project at all, only legislated the *possibility* that a project would be created. . . ." He argues that the true legislative acts of the Town Council were the successive approvals of the "detailed plans."

We advert to the rule reiterated in *Martin* v. *Smith, supra,* 184 Cal. App.2d 571, 575, that: " 'Acts constituting a declaration of public purpose, and making provisions for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative power. . . .' " We are impelled to hold that the Town Council's earlier Resolution 780, by which it joined the District and approved the extensive but general plans of construction within the town's borders, was a "declaration of public purpose, . . . making provisions for ways and means of its accomplishment, . . ."

On the other hand, the Town Council's later related resolutions appear to be but administrative implementation of the previously declared public purpose; the approval of final detailed plans, for which provision was already made, was one of the means of accomplishing that purpose. In the language of *Martin* v. *Smith, supra,* 184 Cal.App.2d 571, 575, such acts were "those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, . . ."

Accordingly, Resolution 901 must be deemed an administrative act of the Town Council, not subject to the referendum process.

We are aided in this conclusion by the case of *Andrews* v. *City of San Bernardino,* 175 Cal.App.2d 459 [346 P.2d 457] [cert. den., 364 U.S. 288 (5 L.Ed.2d 38, 81 S.Ct. 48)]. There under a community redevelopment law the city retained the right to approve final redevelopment plans. It was held that the city's ordinance approving such plans was not a legislative act, but was instead an administrative or executive function, unaffected by the power of referendum.

Nothing is seen in the case of *Wheelright* v. *County of Marin, supra,* 2 Cal.3d 448, heavily relied upon by plaintiff Valentine, which reasonably supports the judgment. There a county board of supervisors had by ordinance rezoned a large parcel of land and adopted a master plan for its development. The board thereafter adopted an ordinance approving a plan for an access road from other parts of the county to the rezoned area. The road, and its route, do not appear to have been considered in, and may not be said to have implemented, the earlier zoning and master plan ordinance.

Nor is any significance seen in the use of the here-emphasized adjective of Resolution 780's clause retaining in the Town of Ross "an *absolute* right to consider and review any detailed plans." (Italics added.)

We observe, parenthetically, that the plans approved by Resolution 901 do not appear to have substantially deviated from the general schematic plans prepared by the Army Corps of Engineers for the District; they seem merely to have furnished greater detail of the agreed-upon construction project.

The judgment is reversed.

Molinari, P. J., and Devine, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 14, 1974. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.