[Civ. No. 36515. First Dist., Div. One. Mar. 30, 1976.]

JAN ALTON WALKER et al., Plaintiffs and Appellants, v.
CITY OF SALINAS et al., Defendants and Respondents.

**COUNSEL**

`Frank H. James and Frank J. Noll for Plaintiffs and Appellants.

Warren J. Lynch, City Attorney, for Defendants and Respondents.

**OPINION**

**SIMS, J.**—Plaintiffs have appealed from a judgment which denied them any relief on their petition for writ of mandate in which they sought a peremptory writ compelling the city clerk to examine and certify a referendum petition, and the city council to either rescind the ordinance,

the subject of the petition, or submit it to a vote of the electors of the city. The ordinance in question is entitled "An Ordinance of the City of Salinas, State of California, Approving and Adopting the Revitalization Plan for the Central City Project Area." The ordinance on its face indicates that it was adopted under the provisions of the Community Redevelopment Law (Health & Saf. Code, §§ 33000-33738), specifically those sections governing the procedure for adoption of redevelopment plans by the legislative body. (*Id.*, §§ 33360-33376, particularly §§ 33365-33368.) The ordinance was adopted on July 8, 1974, and three days later by emergency legislation section 4051a was added to the Elections Code prescribing the requirements for affidavits attached to referendum petitions.

The issues framed by the parties on this appeal are whether the ordinance in question was subject to referendum proceedings, and whether the referendum petitions were in the form required by law. Each of these issues is resolved adversely to petitioners. The judgment must be affirmed.

## I

Section 1 of article IV of the California Constitution provides: "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum."

Section 25 of the same article reads: "Initiative and referendum powers may be exercised by the electors of each city or county under procedure that the Legislature shall provide. This section does not affect a city having a charter." Similarly section 4057 of the Elections Code provides in part: "This chapter does not apply to cities having a charter adopted and ratified under the provisions of Section 8 of Article XI of the Constitution, and having in such charter any provision for the direct initiation of ordinances by the voters; . . ."

Salinas is a chartered city. (Stats. 1919, p. 1398, as amended, Deering's, General Laws, Act 6771.)

Section 88 of the charter provided and provides: "POWERS RESERVED TO THE PEOPLE. Sec. 88. The people reserve to themselves the power to adopt or reject ordinances at the polls, independent of the council." (Stats. 1919, p. 1417.)

Prior to 1957 the charter contained detailed provisions for the exercise of the initiative, the referendum and recall. In that year those provisions were repealed and section 89 was amended to read:

"The Initiative, Referendum, and Recall.

"Sec. 89. Except insofar as is otherwise provided by ordinances or resolutions hereafter enacted, the provisions of the Elections Code of the State of California, as the same now exist or may hereafter be amended, governing the initiative, the referendum, and the recall, in general law cities, shall apply to the use thereof in the city insofar as the same are not in conflict with this Charter." (Stats. 1957, p. 4820.)

The charter also always has provided: "APPLICATION OF GENERAL LAWS. Sec. 107. All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, or with ordinances, or resolutions hereby continued in force, or hereafter enacted, shall be applicable to the city." (Stats. 1919, p. 1422.)

It thus appears that the power of referendum under the charter is now governed by the same procedures and principles as are applicable under the general law set forth in the Constitution and in the Elections Code as interpreted by the courts. In *Hopping* v. *Council of City of Richmond* (1915) 170 Cal. 605 [150 P. 977], the court opined: "The declaration of the constitution that its provisions do not affect or limit the referendum power reserved to the people of any city by its charter, does not limit the constitutional reservation nor enlarge those reserved by such charter. The two reservations are thereby made independent of each other. The constitutional reservation goes to the full extent expressed by its language. If the charter differs from the constitution in any respect it does not thereby diminish the power reserved by the constitution. On the other hand, if the powers reserved by the charter exceed those reserved in the constitution the effect of the charter would be to give to the people the additional powers there described. [Citation.]" (170 Cal. at pp. 610-611. See also *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 622-623 [191 P.2d 426].)

In *Hopping,* the court recognized the uniformly proclaimed, but variously applied, principle that the power of referendum applies only to legislative acts. It stated: "We think the provisions of the referendum should be held applicable to all ordinances and resolutions which

constitute an exercise of legislative power. The public discussion which led to the adoption of the referendum shows that it was directed at supposed evils of legislation alone. To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. In the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city. [Citation.] No such express declaration appears here and we, therefore, hold that the referendum powers given to the people of Richmond by its charter apply only to legislative acts of the council. The name given it is of no consequence. [Citation.] If the council should, either by resolution or ordinance, do something purely executive in character, unmixed with any exercise of legislative power, the provisions of this section should be held inapplicable thereto. But if a legislative act is thereby done, the referendum may be invoked whether the measure is denominated an ordinance or resolution." (*Id.,* p. 611. See also *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537] [app. dism. 400 U.S. 807 (17 L.Ed.2d 37, 91 S.Ct. 65]]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834 [323 P.2d 71]; *Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550, 557 [219 P.2d 457]; *Lincoln Property Co. No. 41, Inc.* v. *Law* (1975) 45 Cal.App.3d 230, 234 [119 Cal.Rptr. 292]; *Valentine* v. *Town of Ross* (1974) 39 Cal.App.3d 954, 957 [114 Cal.Rptr. 678]; *Hughes* v. *City of Lincoln* (1965) 232 Cal.App.2d 741, 744 [43 Cal.Rptr. 306]; *O'Loane* v. *O'Rourke* (1965) 231 Cal.App.2d 774, 783-784 [42 Cal.Rptr. 283]; *Reagan* v. *City of Sausalito* (1962) 210 Cal.App.2d 618, 621 [26 Cal.Rptr. 775]; *Martin* v. *Smith* (1960) 184 Cal.App.2d 571, 575 [7 Cal.Rptr. 725]; *Andrews* v. *City of San Bernardino* (1959) 175 Cal.App.2d 459, 461 [346 P.2d 457]; *McKevitt* v. *City of Sacramento* (1921) 55 Cal.App. 117, 124 [203 P. 132]; and Note, *Limitations on Initiative and Referendum* (1951) 3 Stan.L.Rev. 497, 502-504.)

It is recognized "that referendum provisions of the Constitution and of charters and statutes should, as a general rule, be liberally construed in favor of the reserved power." (*Hunt* v. *Mayor & Council of Riverside, supra,* 31 Cal.2d 619, 628, citations omitted. See also *Lincoln Property Co. No. 41, Inc.* v. *Law, supra,* 45 Cal.App.3d 230, 233-234; and *O'Loane* v. *O'Rourke, supra,* 231 Cal.App.2d 774, 783.) Nevertheless the courts have hewn a path dividing administrative and legislative matters. In *McKevitt* v. *City of Sacramento, supra,* the dividing line was described as follows:

"Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existance." (55 Cal.App. at p. 124. See also *Hughes* v. *City of Lincoln, supra,* 232 Cal.App.2d 741, 744-745; *Valentine* v. *Town of Ross, supra,* 39 Cal.App.3d 954, 957-958; *O'Loane* v. *O'Rourke, supra,* 231 Cal.App.2d 774, 784; *Reagan* v. *City of Sausalito, supra,* 210 Cal.App.2d 618, 621-622; and *Martin* v. *Smith, supra,* 184 Cal.App.2d 571, 575.)

In *Housing Authority* v. *Superior Court, supra,* the court examined the question of whether action by a local governmental unit under the Housing Authority Law was subject to referendum. It said, "But assuming that the charter of Eureka goes that far [to permit a referendum on any act of the city council], its provisions have been superseded by the more recent state legislation which extends the benefits of the federal housing act to the cities and counties of this state. As held in the Kleiber case, *supra* [*Kleiber* v. *City etc. of San Francisco* (1941) 18 Cal.2d 718, 725 (117 P.2d 657)], the actions of local governing bodies under the statewide housing laws '. . . are administrative only for the purpose of giving statewide effect to the declared legislative policy . . . .' " (35 Cal.2d at p. 559. See also *Hughes* v. *City of Lincoln, supra,* 232 Cal.App.2d 741, 745; *Andrews* v. *City of San Bernardino, supra,* 175 Cal.App.2d 459, 462; and *Lockhart* v. *City of Bakersfield* (1954) 123 Cal.App.2d 728, 731 [267 P.2d 871].) This principle was recognized in *Hughes* v. *City of Lincoln, supra,* as follows: "A second test is superimposed upon the first when the local proposal deals with a subject affected by state policy and state law. If the subject is one of statewide concern in which the Legislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an 'administrative' characterization, hence is outside the scope of the initiative and referendum. [Citations.]" (232 Cal.App.2d at p. 745.)

In this case the record reflects that in 1960 the city council by resolution established itself as the Salinas Urban Renewal Agency under the provisions of the Community Redevelopment Law of California. (See Stats. 1951, ch. 710, § 1, p. 1923, adding § 33000 et seq. to the Health

& Saf. Code, particularly § 33201.[1]) The ordinance in question was enacted to carry out the state legislative mandate to prepare and adopt a redevelopment plan (§§ 33000-33352) and have it adopted by the governing body of the city (§§ 33360-33376).

The nature of this procedure was recognized in *Andrews* v. *City of San Bernardino, supra,* where the court upheld a judgment refusing to compel a referendum on an ordinance adopting a final redevelopment plan. The court observed, "In the case at bar, the establishment of policy had already been completed by the California Legislature by the adoption of the Community Redevelopment Law and by the declaration of need adopted by Council in 1952. Ordinance 2233 merely makes the factual findings required for final approval of a redevelopment project under the Community Redevelopment Act, which enumerates the procedural steps necessary to set up a community redevelopment project. Here, as in the Housing Authority case, in adopting Ordinance Number 2233 the Council was merely acting in an administrative capacity for the purpose of effectuating the stated legislative policy theretofore adopted." (175 Cal.App.2d at p. 463.)

Plaintiffs acknowledge that the last cited case appears to compel a similar conclusion here, but they contend that it should be reviewed and disapproved because the real policy decision under the Community Redevelopment Law is not the creation of the agency, but the adoption of the final plan. It has been recognized that the adoption of a final plan of zoning or of similar nature within the community by the governing body of a community is subject to referendum. (See *Wheelright* v. *County of Marin, supra,* 2 Cal.3d 448, 457-458 [ordinance approving a precise development plan for the construction of an access road to a previously approved planned community]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834-838 [323 P.2d 71] [amendment to zoning ordinance]; *Hughes* v. *City of Lincoln, supra,* 232 Cal.App.2d 741, 746-747 [decision to fluoridate water]; *O'Loane* v. *O'Rourke, supra,* 231 Cal.App.2d 774, 784-785 [resolution adopting a general plan for a city]; and *Reagan* v. *City of Sausalito, supra,* 210 Cal.App.2d 618, 624 [resolution to acquire lands for a city park].)

[1]The present act in section 33101 now provides: "An agency which, on September 15, 1961, was not authorized to transact any business or exercise any powers by a resolution adopted prior to such date, shall not transact any business or exercise any powers under this part unless, by ordinance, the legislative body declares that there is need for an agency to function in the community. The ordinance of the legislative body declaring that there is need for an agency to function in the community shall be subject to referendum as prescribed by law for a county or a city ordinance."

On the other hand the principle that the local governing body, regardless of its status as a state agency, is carrying out state policy when it acts in proceedings under the Community Redevelopment Law is well established. (See *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 39 [37 Cal.Rptr. 74, 389 P.2d 538] [cert.den., 379 U.S. 899 (13 L.Ed.2d 174, 85 S.Ct. 185)]; and *Duskin* v. *San Francisco Redevelopment Agency* (1973) 31 Cal.App.3d 769, 772-773 [107 Cal.Rptr. 667].) The precedent followed in *Andrews* is supported in many cases. (See *Housing Authority* v. *Superior Court, supra,* 35 Cal.2d 550, 558-559 [resolution approving application for a federal loan under the Federal Housing Act and the Housing Authorities Law of California]; *Martin* v. *Smith, supra,* 184 Cal.App.2d 571, 576-578 [final approval of lease of tideland property by city]; *Lockhart* v. *City of Bakersfield, supra,* 123 Cal.App.2d 728, 733-734 [exercise of powers under State Housing Law and Housing Authorities Law]; and *McKevitt* v. *City of Sacramento, supra,* 55 Cal.App. 117, 124-126 [resolution of acceptance and for purchase of park lands with trust funds].)

We therefore decline the invitation to disapprove *Andrews* v. *City of San Bernardino,* and adhere to its rationale and conclusions. The ordinance was not subject to referendum.

## II

Each section of the petition as lodged with the clerk contained the following "Declaration of Circulator,"

"DECLARATION OF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Circulator)

I say that:
I reside at . . . . . . . . . . . . . . . . . . . . . . . . (full address) City of Salinas, Monterey County, California, and am a registered voter in said City. I circulated the preceding paper among voters in said City and saw written the signatures appended to said paper.

"According to my best information and belief each signature is the genuine signature of the person whose name it purports to be and each signer is a voter of the said City.

"I declare under penalty of perjury that the foregoing is true and correct except as to those matters declared on information and belief and

as to them I believe them to be true. (Do not sign (as circulator) until you send in petition.)

"Executed at . . . . . . . . . . California, on . . . . . . . , 1974.

. . . . . . . . . . . . . . . . . . . . . . . . . . .
(Signature of Circulator)"

The ordinance was adopted July 8, 1974. The plaintiffs, under the provisions of the Elections Code which, as we have seen, were incorporated by the provisions of the charter as amended in 1957, had 30 days within which to circulate and submit a petition protesting against adoption of the ordinance. (Elec. Code, §§ 4050 and 4051.)

On July 11, 1974, three days after the adoption of the ordinance, section 4051a was added to the Elections Code to become effective on that date as an emergency measure. (Stats. 1974, ch. 469, §§ 2 and 4.)[2] The form of declaration used by the plaintiffs fails to comply with the provisions of the statute that the circulator making the declaration state that he "personally observed each signer placing thereon . . . the date thereof and his residence address. . . ."

Plaintiffs acknowledge that legislation may be given a retrospective effect, but claim that there must be a clear intention to do so. In *Krause* v. *Rarity* (1930) 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327], the court ruled that the passage of the guest law could not affect pending litigation. The court stated, ". . . although the legislature has the power to give a statute retrospective operation, if it does not impair the obligation of contracts

---

[2]The added section, 4051a, reads: "Each separate section shall have attached an affidavit made by a voter of the city which shall state according to the best information and belief of the affiant, the following: [¶] (a) That each signature appearing on each section of the petition is the genuine signature of the person whose name it purports to be; and [¶] (b) That each signer of the petition or section thereof, was, at the time of placing such signature on the petition, a registered qualified voter of the city; and [¶] (c) That the affiant personally observed each signer placing thereon his signature, the date thereof and his residence address, by street and number, or, if no street or number exists, then a designation of such place of residence which will enable its location to be easily ascertained."

The legislative history of the section indicates that it was introduced as part of Assembly Bill No. 3042, along with an amendment to Elections Code section 4051.2, on February 7, 1974; that the bill passed the Assembly and was amended in the Senate on May 1, 1974; that in conference committee on June 28, 1974, the bill was supplemented with amendments to section 2504 of the Elections Code and an urgency clause, and subsequently passed both houses of the Legislature and was signed effective July 11, 1974.

or disturb vested rights, yet it is to be presumed that no statute is intended to have that effect, and it will not be given that effect, unless such intention clearly appear from the language of the statute." (210 Cal. at p. 655. See also *Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 195 [272 P.2d 757].) "

On the other hand it is stated: "The principle which forbids application of new enactments or revisions retroactively, applies only to statutes dealing with vested or substantive rights. [Citation.] It is also well established that statutes effecting changes in civil procedure or remedy may have valid retrospective application [citations]." (*Abrams* v. *Stone* (1957) 154 Cal.App.2d 33, 41 [315 P.2d 453]. See also *Mercury Herald Co.* v. *Moore* (1943) 22 Cal.2d 269, 275 [138 P.2d 673, 147 P.2d 1111]; *Kline* v. *San Francisco U. School Dist.,* (1940) 40 Cal.App.2d 174, 176 [104 P.2d 661, 105 P.2d 362]; and 45 Cal.Jur.2d, Statutes, §§ 26-28, pp. 552-557.)

■ Examination of the situation here in the light of the foregoing precedents reflects that only petitions filed before July 11, 1974, can be said to be subject to any retrospective application. The complaint alleged that the petition in this case was not submitted until August 7, 1974. There was adequate time to comply with the new statute. The situation is governed by the following principle: "It is settled, however, that the Legislature may validly limit the time within which an existing right may be exercised if the period remaining for its assertion is a reasonable one. [Citations.] This rule is akin to the rule that the Legislature may enact a statute of limitations applicable to existing causes of action or shorten a former limitation period if the time allowed to commence the action is reasonable. [Citations.]" (*Mercury Herald Co.* v. *Moore, supra,* 22 Cal.2d 269, 275. See also *Kline* v. *San Francisco U. High School Dist., supra,* 40 Cal.App.2d 174, 176-177.)

Where properly authenticated the declaration may be prima facie evidence that the signatures are genuine. (See *Wheelright* v. *County of Marin, supra,* 2 Cal.3d 448, 454-457.) The Legislature can certainly change the requisites of proof prospectively, and there was no vested right that the form used by the plaintiffs between July 8 and July 11 would be valid thereafter.

The parties have not discussed the requirements of the law prior to July 11, 1974. It appears that prior to the adoption of section 4051a (fn. 2 above), there was no provision in the article of the Elections Code governing municipal referendum (div. 4, ch. 3, art. 2, §§ 4050-4057)

which prescribed the form of affidavit to be used on a referendum petition. The article did originally provide: "The provisions of this chapter relating to the form of petitions, the duties of the city clerk, and the manner of holding elections, when an ordinance is proposed by initiative petition, govern the procedure when a protest is filed against an ordinance." (§ 4053.) The provisions of article 1 of the same chapter, which governed initiative petitions, then prescribed as follows: "Each separate paper shall have attached an affidavit made by a voter of the city. The affidavit shall state that the affiant circulated that particular paper, saw written the signatures appended to it, that he resides at _____, and that according to the best information and belief of the affiant: [¶] (a) Each is the genuine signature of the person whose name it purports to be. [¶] (b) The signer is a voter of the city." (§ 4008.) The form used in the declaration in this case complies with those requirements.

In 1967, however, the Legislature undertook a comprehensive revision of the provisions governing municipal initiative and referendum. By this legislation the requirements for verification of an initiative petition were transferred to section 4007 and revised to set forth the identical language subsequently used in 1974 in section 4051a. (Stats. 1967, ch. 1148, § 8, p. 2825; and cf. fn. 2 above.) No comparable amendment was made to article 2, governing referendum petitions, at that time. The provisions for examination of an initiative petition by the clerk of the legislative body were divided into a prefiling examination (§ 4008) and a post-filing examination (§§ 4009 and 4009.1; Stats. 1967, ch. 1148, §§ 9, 10 and 11, pp. 2825-2826). Comparable sections were added to article 2 (§§ 4051.1, 4051.2 and 4051.3; Stats. 1967, ch. 1148, §§ 14, 15 and 16, pp. 2827-2828). Section 4053 which formerly referred to the initiative process, as has been quoted above, was amended to cover another subject (Stats. 1967, ch. 1148, § 17, p. 2828). Section 4053.1 was added to read, "Elections, pursuant to this article, shall be held in accordance with the provisions of Sections 4014 through 4022, inclusive, hereof." (*Id.,* § 18, p. 2828.)

The result of the foregoing amendments was to leave the referendum requirements in article 2 without any provision explicating, expressly or by reference, the requirements of the circulator's verification. Nevertheless it was provided in each article, "If any signature does not bear in close proximity thereto, a residence address as hereinabove defined, such signature shall be disregarded." (§§ 4009, subd. (b) and 4051.2, subd. (b); Stats. 1967, ch. 1148, §§ 10 and 15, pp. 2826 and 2827.) In 1969 the directions to the clerk in each article were brought into complete conformity with the provisions adopted in 1967 governing the verifica-

tion of an initiative petition (§ 4007), by the addition of the following requirement: "If it appears that a date and address following any signature was placed there by a person other than the signer, such signature shall be disregarded." (§§ 4009, subd. (b), and 4051.2, subd. (b); Stats. 1969, ch. 940, §§ 5 and 12, pp. 1879 and 1881. § 4051.2 was also amended in 1974 [Stats. 1974, ch. 469, § 3, effective July 11, 1974] to correct an apparent 1969 clerical omission relating to duplicate signatures.)

From the foregoing it is evident that since 1969, and perhaps 1967, the clerk was entitled to disregard signatures which were not accompanied by a date and address placed on the petition by the signator. The plaintiffs were charged with notice of the provisions outlined above. It is arguable that irrespective of the 1974 addition of section 4051a, a petition which failed to show on its face that each signator placed a date and address in close proximity to his name could be disregarded. There was certainly no vested interest in the form of declaration actually used by the plaintiffs.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 26, 1976.